153 So.2d 162 (1963)
Larry G. DOWDEN, Plaintiff-Appellant,
v.
JEFFERSON INSURANCE COMPANY, Defendant-Appellee.
No. 841.
Court of Appeal of Louisiana, Third Circuit.
May 14, 1963.
*163 Nathan A. Cormie & Assoc. by Payton Covington, Lake Charles, for plaintiff-appellant-appellee.
Cavanaugh, Hickman, Brame & Holt, by Frank Brame, Lake Charles, for defendant-appellee-appellant.
Before TATE, FRUGE and SAVOY, JJ.
FRUGE, Judge.
This is a suit for damages instituted by Larry G. Dowden against Jefferson Insurance Company, insurer of an automobile owned and operated by Dean C. Peterson, arising out of an automobile accident which occurred when an automobile driven by Dean C. Peterson collided with an automobile driven by Larry G. Dowden.
This case was tried before a jury which rendered a verdict in favor of the plaintiff in the sum of $2,000.00. From this judgment both litigants have appealed. In urging error, plaintiff maintains that the award of $2,000.00 is manifestly inadequate. Defendant, on the other hand, submits that its insured should have been exonerated from liability because of a latent defective brake system.
With the exception of the alleged latent defective brake system, the facts surrounding the collision are disputed. The accident occurred at about 12:15 A.M. on July 21, 1961, in the City of Lake Charles, Louisiana, at the intersection of U.S. Highway 90 and U.S. Highway 171. Plaintiff had been driving his automobile in an easterly direction on U.S. Highway 90 on the inside traffic land and had reached a point near the intersection of U.S. Highway 171 when he was forced to bring his vehicle to a stop because the line of traffic ahead had come to a stop. At this same time the defendant's insured, Peterson, also proceeding in an easterly direction of Highway 90 struck plaintiff's automobile from the rear, causing the injuries and damages sued upon herein.
In urging that Peterson was not negligent in running into the rear of plaintiff's automobile, defendant alleges that the sole proximate cause of the accident was the sudden and unexpected failure of the brakes in the Peterson vehicle. In support of this contention, Peterson testified that he purchased the automobile on April 28, 1961, and that the car was inspected by a Shell service station in Lake Charles, Louisiana, on April 29, 1961. He further testified that the brakes were checked at that time and that no defects were found. Plaintiff stated that from the time of the inspection to the date of the accident, some three months later, he did not notice any difficulty in applying the brakes. On the day of the accident, according to Peterson's testimony, he first applied his brakes and then released them as he approached plaintiff's car. At this time they worked. When he was about four car lengths behind plaintiff's vehicle, he again applied his brakes, but at this time they failed to hold. Mr. Terry Buell, who was riding in the front seat of the Peterson automobile, likewise testified that the brakes failed to hold the second time they were applied. It should also be noted that Peterson testified that subsequent to the accident he inspected his car and found a crack in the rubber hose that served as the brake line for the left front wheel. He stated that he did not show this ruptured hose to anyone, nor did he keep the hose. It appears that he simply replaced the broken line and discarded it.
In addition to the above testimony, Mr. James B. Crockston, an expert on hydraulic *164 brakes, testified on behalf of defendant. In essence, his testimony was to the effect that it was possible for the brakes to function properly at a given instance and then suddenly fail to hold due to the possibility of an intervening rupture in the brake line. We note, however, that Mr. Crockston never examined the Peterson automobile either before or after the accident. His testimony was therefore limited to answering hypothetical questions relating to the operation of hydraulic brake systems.
In direct opposition to Peterson's version of the brake failure, is the testimony of Carl Henry, the State Trooper who investigated the accident. After being informed by Peterson that his brakes had failed to hold, Henry got in the Peterson automobile and checked the brake pedal. To use Officer Henry's own words, "the brake pedal was high and hard, didn't go down like there was a leak in the line or anything, when I pressed on it." (Tr. 152) Additionally, Conrad Schatzle and L. C. Ross, experts on hydraulic brake systems, testified that if there had been a rupture in the brake line of the Peterson automobile, the brakes would not have failed to hold in one instance and returned to normal at a subsequent time.
The law is well settled that a driver is not responsible for latent defects in his car, where he exercises reasonable care in having the car inspected. Trascher v. Eagle Indemnity Co. of New York, La.App., 48 So.2d 695. However, for such defects to be a valid defense, "the proof submitted must be so strong as to exclude any other reasonable hypothesis with reference to the cause of the accident, except that it resulted solely from the alleged defects." Trascher v. Eagle Indemnity Co., supra, 48 So.2d at 698. See also Hassell v. Colletti, La.App., 12 So.2d 31. Furthermore, as recently enunciated by this court in Breaux v. Valin, La.App., 138 So.2d 405, 408, "[t]hese cases indicate that for such defense to be valid, in addition to his own statement, the driver should by testimony of a mechanic or other competent evidence prove that the defect in the brakes really existed, as well as its nature, and that (insofar as the owner is concerned) such defect could not reasonably have been discovered and remedied by proper inspection."
Viewing the evidence as a whole, we are of the opinion that defendant has failed to satisfy the heavy burden of proof which the law requires. Certainly, we cannot say that the jury committed manifest error in rejecting this defense. Accordingly, insofar as defendant's liability is concerned, we find no error in the jury's verdict.
Quantum.
Both parties agree that plaintiff incurred medical and drug bills in the amount of $703.33. Furthermore, there is no dispute that the damage to plaintiff's automobile amounted to $522.87. Thus, plaintiff's medical bills and property damage can be evaluated at $1,226.21. Subtracting this amount from the jury verdict of $2,000.00, we find that the jury awarded plaintiff $773.79 for pain and suffering and loss of earnings.
Plaintiff contends that the amount of $773.79 did not even adequately compensate him for his loss of earnings, which he claims amounted to $1,260.00. In support of this item of damage, plaintiff testified that at the time of the accident he was employed by Southland Security Insurance Company. His work consisted of selling insurance policies; his pay being determined on a commission basis. He further testified that he had done considerable work toward the earning of the commissions, and that he had six or seven policies that he felt he could have closed out within the next week, but was unable to do so because of the accident. Without going into a detailed discussion as to how plaintiff arrived at the amount of $1,260.00 which he alleges he lost as a result of the accident, we are of the opinion that he fell far short of proving this item of damage by a preponderance *165 of the evidence. In this regard we note that the only evidence in the record concerning this item is plaintiff's testimony. Additionally, the record discloses that plaintiff is a student who engaged in the selling of insurance on a part time basis between school terms, and that he did not produce any records of past earnings from the sale of insurance policies, if in fact he ever sold any insurance prior to his accident. In our opinion, plaintiff's expectations as to possible sale of certain insurance policies were at best speculations as to future income, which are not recoverable under our laws. Stevens v. Dowden, La.App., 125 So.2d 234; Jenkins v. Audubon Ins. Co., La.App., 110 So.2d 221.
Concerning plaintiff's physical injuries, we note the following:
Dr. Edmund Campbell, an orthopedic surgeon, examined plaintiff immediately after the accident. He testified that his first examination revealed a mild spasm of the neck muscles and mild limited motion of the neck; tenderness over the front part of his chest, and pain on compression of the chest. X-rays revealed no evidence of bone damage. Dr. Campbell found no evidence of internal injuries. Dr. Campbell also found that within two weeks after the accident, plaintiff exhibited only mild muscle spasm in the low neck and low back, and that by August 18, 1961, about one month after the accident, he could find no objective evidence of muscle spasm, although plaintiff still complained of some pain. The jury evidently discounted the plaintiff's continued complaints of subjective pain thereafter.
At the request of defendant, plaintiff also saw Dr. Norman P. Morin, an orthopedic surgeon from Lake Charles, Louisiana. He examined plaintiff on June 13, 1962, and found him free of any disability. We note that this examination was approximately one year after the accident.
Viewing the medical testimony as a whole and keeping in mind awards made in similar cases, we are of the opinion that the jury award on this item was not manifestly insufficient.
For the reasons assigned, the judgment of the lower court is affirmed; defendant to pay all costs of this appeal.
Affirmed.