481 P.2d 894

Jewell CONNER and James Conner, husband and wife, and Jewell Conner, Guardian ad Litem of Judy Conner, a minor, Appellants,

v.

Milan D. BRKICH and Jane Doe Brkich, his wife, Appellees.

No. 1 CA–CIV 1170.

Court of Appeals of Arizona, Division 1, Department B.

March 10, 1971.

Rehearing Denied April 2, 1971.
Review Denied April 27, 1971.

Wolfe, Rosen & Harris, by David N. Rosen, Phoenix, for appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Ralph Hunsaker, Phoenix, for appellees.

EUBANK, Judge.

This litigation involves a rear-end collision in which an automobile driven by the defendant-appellee Milan Brkich ran into the back of a vehicle driven by Judy Conner, plaintiff-appellants' daughter. Plaintiffs appeal from a jury verdict which held Brkich free from liability.

The accident occurred on April 1, 1966, in the interior of two east-bound lanes of Thomas Road in the city of Phoenix, just west of the intersection of Thomas Road and 20th Street. Judy Conner had stopped her vehicle for a red light when it was struck from behind by the front of the Brkich automobile. Brkich, whom we shall treat as the only defendant, defended on the basis of a mechanical malfunction which resulted in the sudden and unanticipated acceleration of his car.

All of the testimony before us was elicited from witnesses called by the plaintiffs during the presentation of their case. The defendant Brkich, called for cross-examination, testified that he was driving a 1965 Chrysler which he had purchased new and with which he had had no previous mechanical difficulty. Describing the accident, he stated that when his car was some 30 to 50 feet behind the Conner vehicle, the motor began to race and "to run out of control." He turned the ignition key off, but the engine continued to race and propelled the car forward and into the Conner vehicle, notwithstanding application of the brakes by Brkich. Brkich testified that his engine behaved in the same manner when he restarted the motor and turned the ignition off in the presence of the investigating police officer shortly after the accident.

The investigating police officer testified that after speaking with Brkich at the scene, he started the engine of the Brkich vehicle and found that the accelerator would "stick" and that the engine, which he described as "powerful", would "race" as if it was "about half wide open". The body shop manager of the garage where the Brkich vehicle was repaired testified that the throttle cable on the car was stretched to "about half throttle", and that this stretching would have the effect of causing the engine to race. This latter witness testified, in effect, that prior to his seeing the engine it had come off the rear motor mount and had moved forward about two inches, causing the stretching of the throttle cable. Following this testimony, plaintiffs' counsel attempted in various ways to elicit from the witness his opinion as to whether the stretching of the cable occurred before or after the impact of the accident in question. The trial judge did not permit the witness to answer the question in "before or after" form, but plaintiffs' counsel was permitted to question the witness as to what might have caused the engine to move forward, as follows:

"Q [By Mr. Rosen] Bill, will the motor mounts coming off in the manner that you observed them in the Brkich vehicle cause a stretching of the accelerator cable?

"A [By Mr. Robinson] Yes, it will.

"Q Now, what can cause the motor to come off the motor mount?

\* \* \* \* \* \*

"A The motor surging forward.

"Q The motor surging forward?

"A Yes.

"Q Is there anything else that you can think of that would cause the motor to come off the motor mounts?

· "A No."

In subsequent testimony the body shop manager testified that although in his experience the "condition" in which he found the Brkich automobile did not occur in the absence of an accident, it was "possible" for the "condition" to occur without an accident.

Plaintiffs advance four contentions on appeal. The first two contentions are interrelated and are stated in terms of burden of proof. The first contention is that the defendant Brkich had the burden of proving the defective condition in his car which resulted in its mechanical failure. Cases defining a plaintiff's burden of proof as to causation in products liability cases are cited in support of this contention.[1] The second contention is, in essence, that in order for defendant to carry this burden, he was required to present expert testimony showing the cause of the injury-producing malfunction and corroborating his own assertion of non-culpability. Appellants assert that Brkich failed to carry this burden of proof and that they were entitled to a directed verdict on the issue of liability.

We cannot agree. It may help to place the matter in context to observe that a plaintiff who is the victim of "the usual rear-end collision" may, under appropriate circumstances, have the benefit of the doctrine of *res ipsa loquitur*. O'Donnell v. Maves, 103 Ariz. 28, 30, 436 P.2d 577, 579 (1968). But where, as here, the plaintiffs delve into the subject of causation as a part of their case in chief, the evidence so adduced may be considered in determining whether the opposing party has met any burden placed upon him. *Cf.* Tovrea Land & Cattle Co. v. Linsenmeyer, 100 Ariz. 107, 123, 412 P.2d 47, 58 (1966).[2] The real question is whether there was *any* substantial, competent evidence to support the verdict. See Cano v. Neill, 12 Ariz.App. 562, 570, 473 P.2d 487, 495 (1970).

The defendant Brkich unequivocally testified that his suddenly racing engine propelled him into the Conner vehicle. All of the evidence corroborated the existence of a malfunctioning throttle or accelerator *after* the accident. The question became reduced to whether the malfunction first occurred before or as a result of the accident. Brkich's testimony was that the malfunction caused the accident, and the body shop manager's was not conclusively to the contrary.

Plaintiffs rely heavily upon Goldfarb v. Wright, 1 Wash.App. 759, 463 P.2d 669 (1970), where the court held that the defendant's own testimony of sudden brake failure was not "substantial" evidence upon which to base a verdict in her favor. Louisiana appears to follow a similar rule.[3] The case of Bryant v. Chasteen,

1. E. g., Biondo v. General Motors Corporation, 5 Ariz.App. 286, 425 P.2d 856 (1967).

2. But his does not necessarily mean that such a plaintiff would be entitled to a directed verdict even if the defendant failed to produce any evidence, since in this jurisdiction application of the principle of res ipsa loquitur merely gives rise to a permissive inference. To obtain a directed verdict, the evidence adduced must have been such that reasonable minds could not have differed over the question of whether defendant was negligent.

3. *See* Dowden v. Jefferson Ins. Co., La. App. 3rd Cir.Ct., 153 So.2d 162 (1963). Plaintiffs also cite a Connecticut case, Hamill v. Smith, 25 Conn.Sup. 183, 199 A.2d 343 (1964), but that case involved an appeal from a summary judgment and the minority Connecticut rule on the effect of violation of its "good brakes" statute is noted in Dayton v. Palmer, 1 Ariz. App. 184, 186, 400 P.2d 855, 857 (1965).

121 Ga.App. 446, 174 S.E.2d 192, 193 (1970), presents an interesting contrast with the Goldfarb case, but whatever the law in other jurisdictions, we see no tendency in the Arizona cases to require that evidence of automotive malfunction come solely through the lips of an expert. *Cf.* Campbell v. Brinson, 89 Ariz. 197, 199, 360 P.2d 211, 213 (1961). Nor are we sure, under our present system of liability where responsibility is predicated upon fault and the ultimate inquiry is not merely as to the existence of a defect but as to whether the operator was negligent, that the rule which appears to prevail in Washington and Louisiana represents consummate wisdom. We think, under the Arizona law and all of the evidence here, that defendant's liability was a question for the jury. *Cf.* Campbell v. Brinson, supra, and Glass v. Carlberg, 2 Ariz.App. 401, 409 P.2d 560 (1966).

The next contention is that the trial judge erred in refusing to permit the body shop manager to testify as to whether the stretching of the throttle cable occurred before or after the accident. If inquiry had been foreclosed on the question as to which came first, malfunction or accident, a serious question might arise. Our reading of the trial transcript, however, indicates that although the trial judge did not consider the witness qualified to answer the question as it was initially phrased, he did not preclude inquiry as to whether the defect testified to by the body shop manager was caused by the accident. Plaintiffs were permitted to develop their case, as the body shop manager's subsequent testimony, quoted above, indicates, and we see no error resulting from this ruling.

Plaintiffs' last contention is that the trial judge erred in refusing to allow them to poll the jury in an effort to ascertain whether the jurors were influenced by a newspaper article appearing on the last day of trial relating to accelerator difficulties in certain cars produced by General Motors Corporation. As plaintiffs

concede, "the publicity was logically irrelevant", since the defendant Brkich was not driving a car produced by General Motors Corporation at the time of the accident. There is no suggestion that defendant or the litigation itself had anything to do with the publication of the newspaper story. The trial judge did not abuse his discretion in denying plaintiffs' request to poll the jury.

Judgment affirmed.

JACOBSON, P. J., and HAIRE, J., concur.