JOSÉ M. NIEVES LÓPEZ y OTROS, demandantes y recurrentes, *v.* MICHAEL REXACH BONET y OTROS, demandados y recurridos.

*Número:* RE-87-96      *Resuelto:* 30 de junio de 1989

428

*Víctor M. Acevedo Tirado* y *Moisés Abreu Cordero*, abogados de los recurrentes; *José A. Iguina De la Rosa*, abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

El presente recurso nos permite exponer y precisar los requisitos del alcance probatorio de las Reglas 64 y 65 de Evidencia, 32 L.P.R.A. Ap. IV, y àdemás, examinar la aplicabilidad de la doctrina de *res ipsa loquitur* en una colisión vehicular en cadena.

I

El 18 de mayo de 1984, aproximadamente a las 10:30 A.M., José M. Nieves López tenía detenido su automóvil Datsun 200 SX, 1981, en espera de que cambiara un semáforo de la Ave. 65 de Infantería. Fue impactado por la parte trasera.

Ante el Tribunal Superior, Sala de Carolina, Nieves López alegó que el accidente fue causado por la negligencia del demandado Michael Rexach Bonet, quien inició la colisión. Alegadamente éste impactó el de una dama identificada como Carmen Figueroa y ella, a su vez, chocó el suyo. La señora Figueroa, aunque también demandada, no pudo ser localizada. Tampoco fue emplazada mediante edictos.

Rexach Bonet y su aseguradora contestaron la demanda. Negaron responsabilidad. Adujeron, en síntesis, que el accidente se debió a que Carmen Figueroa impactó *primero* a Nieves López.

La fiel solución del recurso exige una referencia a la prueba según la sentencia del ilustrado foro de instancia.[1] En la vista en su fondo el demandante Nieves López reiteró que su auto estaba detenido esperando que cambiase el semáforo. Atestó que de frente tenía una camioneta. De pronto sintió un solo impacto fuerte en la parte trasera de su vehículo. Como consecuencia, chocó la camioneta. Se desmontó

---

[1] Tomamos directamente de la sentencia los hechos, pues el recurrente José M. Nieves López *no* elevó exposición narrativa de la prueba.

de su automóvil para tomar la información pertinente a los conductores involucrados. La dama que le impactó se identificó como Carmen Figueroa y le dio un número de teléfono. Manejaba un automóvil Chevrolet Sedan. Ella le dijo: "Yo le di a usted porque éste (refiriéndose a Rexach Bonet) me dio a mí primero." Solicitud de revisión, pág. 3.

Esta manifestación fue oportunamente objetada y sostenida por el tribunal sentenciador por constituir prueba de referencia. Dicho foro dictaminó que no se demostró la debida diligencia para lograr la presencia de Carmen Figueroa al juicio.

En efecto, Nieves López indicó que no le pidió a ella que le mostrara la licencia de conducir. Tampoco anotó la tablilla del automóvil. Por su parte, Rexach Bonet le suministró todos los datos pertinentes. Además, éste último llevaba consigo una cámara y tomó fotografías de la parte delantera y posterior del segundo vehículo (el de la señora Figueroa) y de la parte delantera del tercero (el de Nieves López). Las mismas fueron admitidas en evidencia. Demuestran que el automóvil Datsun sufrió mayores daños en su parte delantera. En su parte trasera apenas se percibe una pequeña abolladura. En cuanto al frente del automóvil Chevrolet de la señora Figueroa, tampoco revela daños notables. No existen fotografías del frente del automóvil de Rexach Bonet ni tampoco de la parte posterior del de la señora Figueroa.

Posteriormente, Nieves López trató de comunicarse con la señora Figueroa en el número de teléfono que ella le suministró. Resultó falso. No la conocían. También combinó los números originales sin éxito. Realizó infructuosamente gestiones con la Puerto Rico Telephone Co. Después no hizo más gestiones para localizarla.

El otro testigo fue el policía Manuel E. Ramos. No recordó nada del accidente. Confrontado con el *Exhibit* 1 (demandante), Informe de Accidente, a raíz del accidente ad-

mitió haberlo preparado exclusivamente con la *información brindada por el demandante Nieves López*. Dicho informe es un tanto confuso.[2] Identifica al carro Núm. 1 como el perteneciente a Carmen Figueroa, sin embargo, consigna la tablilla del automóvil correspondiente a Rexach Bonet que, a su vez, identifica como el auto Núm. 2. El vehículo de Nieves López es identificado como el Núm. 3. Aun así, su contenido es desfavorable como prueba al demandante Nieves López. Describe la ocurrencia del accidente del modo siguiente:

> El auto núm. 1 el cual se dio a la fuga rodaba por la carretera núm. 3 en dirección de este a oeste y al llegar al km. 10.5 de Carolina este [sic] no guardaba distancia rasonable [sic] del vehículo que imediatamente [sic] le precedía dando lugar este a que con el frente impactara a el [sic] auto núm. 2 que rodaba en la misma dirección y carril por la parte posterior, este auto núm. 2 con el impacto se fue hacia delante [sic] impactando con el frente a el [sic] auto núm. 3 que rodaba en la misma dirección y carril. También, el conductor del auto núm. 3 indicó que le dolía el cuello y la espalda con motivo del accidente e iba a pasar por un hospital luego.

---

[2] En un informe suplementario posterior —fechado 8 de agosto de 1984— se establece que las partes (Miguel Rexach Bonet y señor Nieves López) llegaron a un acuerdo. El policía José Hernández pidió el archivo del caso. Desconocemos el tipo y alcance de este acuerdo. Pudo ser que cada uno repara por cuenta propia sus respectivos vehículos o que Rexach Bonet se hacía responsable. Dos (2) razones nos impiden tomar en consideración ese archivo.

La primera, según indicado, es totalmente especulativo precisar el contenido y alcance de ese acuerdo. De los autos y prueba disponible no tenemos explicación alguna. Existe una carencia *total* de elementos de juicio para justipreciar su efecto.

Y segunda, como Foro apelativo no podemos, *sua sponte*, tomar en cuenta cualesquiera conversaciones o negociaciones habidas entre partes con miras a transigir una posible causa de litigio como equivalentes de una admisión de responsabilidad de Rexach Bonet. *Rodríguez v. Great Am. Indemnity Co.*, 63 D.P.R. 605 (1944); *Pueblo v. Central Cambalache*, 59 D.P.R. 60 (1941). El verdadero fundamento que justifica la exclusión de evidencia sobre transacción de reclamaciones es que ordinariamente no constituye una aceptación de responsabilidad. Puede responder a un deseo de evitar molestias o trastornos ulteriores. *Pueblo v. Ruiz*, 83 D.P.R. 349 (1961).

Los únicos datos que hay son los del conductor del auto núm. 3 los datos del núm. 2 solo [sic] hay un teléfono y el nombre, este accidente es, para el Policía Justino Santiago de Accidentes Hit and Run núm. 6124.

Los daños del núm. 3 del frente fue con el impacto le dio a otro vehículo pero no sufrió daño y se fue el núm. 4.

Con esta prueba, a pedido de los demandados, el tribunal desestimó bajo la Regla 39.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III. A solicitud de Nieves López acordamos revisar. Sus seis (6) señalamientos de errores son susceptibles de sintetizarse en la negativa del tribunal de instancia a admitir las manifestaciones de la señora Figueroa bajo las disposiciones de las Reglas 64(A)(5) y 65(B) de Evidencia, 32 L.P.R.A. Ap. IV, y no aplicar la doctrina de *res ipsa loquitur.* No tiene razón.

## II

■ Examinemos inicialmente los ángulos evidenciarios. "Prueba de referencia" es aquella "declaración aparte de la que hace el declarante al testificar en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado". Regla 60(C) de Evidencia, 32 L.P.R.A. Ap. IV. Su inadmisibilidad está atada a los riesgos inherentes que presenta relativos a la narración, percepción, recuerdo del acontecimiento y sinceridad del declarante. *Pueblo v. García Reyes*, 113 D.P.R. 843, 853 (1983).

■ Sin embargo, la norma no es absoluta. Son innumerables las excepciones. Una la dispone la Regla 64(A) de Evidencia, *supra,* que enumera cinco (5) circunstancias bajo las cuales se considera un declarante "no disponible como testigo". En el caso de autos, la modalidad aplicable caracteriza como testigo no disponible a aquel "ausente de la vista [si] el proponente de su declaración ha desplegado diligencia para conseguir su comparecencia mediante citación del tribunal". Regla 64(A)(5) de Evidencia, *supra.*

434

■ A su amparo, la determinación de indisponibilidad está sujeta a demostrar que el proponente ha efectuado un esfuerzo razonable para lograr la presencia del testigo en el juicio. *Pueblo v. Ruiz Lebrón*, 111 D.P.R. 435, 446 (1981). Ello implica probar que se desplegó la debida diligencia para encontrar y citar al testigo mediante medios razonables. La suficiencia de la prueba requerida para probar ese hecho descansa *ex arbitrio judicis*. *Villaronga, Com. v. Tribl. de Distrito*, 74 D.P.R. 331, 337 (1953); E.L. Chiesa, *Práctica Procesal Puertorriqueña: Evidencia*, San Juan, Pubs. J.T.S., 1985, Vol. I, Cap. VIII, pág. 338; E.W. Clearly, *McCormick on Evidence*, 3ra ed., Minnesota, Ed. West Publishing Co., 1984, Sec. 253; 4 *Weinstein's Evidence* Sec. 804(a)[01] (1988).

En este caso, según antes expuesto, *Nieves López no fue diligente.* Primero, extrajudicialmente, desde el mismo momento del accidente no actuó, de manera inexplicable, prudencial y diligentemente. No requirió ni examinó la licencia de conducir de la señora Figueroa, como tampoco anotó la tablilla del vehículo. Después se limitó a unas llamadas telefónicas. No hizo otras investigaciones. Una vez presentada la demanda, tampoco gestionó su comparecencia. Nunca trató de emplazarla mediante edictos. Bajo el palio de la Regla 64(A)(5) de Evidencia, *supra*, esta prueba no configura el despliegue de gestiones suficientes. Fueron exíguas. Con estos antecedentes coincidimos con el tribunal de instancia de que no demostró la *no disponibilidad* de la Sra. Carmen Figueroa.

■ Aclarado este extremo, anotemos que su manifestación tampoco era admisible bajo la excepción de la Regla 65(B) de Evidencia, *supra*, que versa sobre declaraciones espontáneas por excitación. En *Pueblo v. García Reyes*, supra, págs. 849–850, expusimos así su evolución doctrinal y requisitos para su admisibilidad:

La mencionada excepción de las declaraciones espontáneas ha sido reconocida desde hace largo tiempo, aunque anteriormente se consideraba como una instancia de la más amplia, aunque poco definida, excepción de *res gestae*. En la práctica, ha sido acogida con mucha liberalidad por este Tribunal. Véanse, por ejemplo, *Pueblo v. Blanco*, 40 D.P.R. 130 (1929), y *Pueblo v. López*, 76 D.P.R. 378 (1954). Véase también la nota en 42 Rev. Jur. U.P.R. 135 (1973). En *Pueblo v. Cortés del Castillo*, 86 D.P.R. 220, 229 (1962), enumeramos los requisitos para su aplicación: "(1) *un evento suficientemente alarmante que produzca una manifestación espontánea e irreflexiva*; (2) falta de tiempo para *inventar la manifestación*; y (3) la manifestación debe referirse *al evento* que la causa." (Énfasis suplido y en el original.)

La garantía circunstancial de veracidad de esta excepción yace en la ocurrencia de un evento o suceso de tal naturaleza o intensidad que genere una expresión espontánea. De ordinario, la combinación física y psicológica de estos factores paraliza temporalmente la facultad de reflexión, y ello reduce las probabilidades de fabricación de la declaración. *Pueblo v. Cortés del Castillo*, 86 D.P.R. 220, 229 (1962); Chiesa, *op. cit.*, pág. 377; Clearly, *op. cit.*, Sec. 297; *Weinstein*, supra, Sec. 803(2)[01]. Para determinar la admisibilidad de este tipo de manifestaciones es menester escudriñar los hechos y circunstancias particulares de cada caso para detectar si el evento verdaderamente puede clasificarse como alarmante o excitante (*excited utterances*). Esto presupone la presentación de prueba independiente para demostrar la espontaneidad de la manifestación. Chiesa, *op. cit.*, págs. 380–381; Clearly, *op. cit.*; *Weinstein*, supra; D.F. Binder, *Hearsay Handbook*, 2da ed., Colorado, Ed. McGraw-Hill, 1983, Sec. 2.06.

Reconocemos que, en muchas ocasiones, una colisión entre automóviles detenidos puede catalogarse como un evento excitante o alarmante susceptible de provocar declaraciones espontáneas. Claro está, ello depende de un sinnú-

mero de factores, entre los que se destacan la magnitud del impacto, el temperamento de los involucrados, el valor económico y daños de los automóviles implicados, las lesiones sufridas por algún pasajero dentro del automóvil, etc.

Aun así, la prueba del demandante Nieves López tampoco logró situar la declaración de Carmen Figueroa bajo esta excepción evidenciaria. A riesgo de especular, no podemos hacerlo nosotros. Recuérdese que no solicitó ni elevó *ante nos* una exposición narrativa de la prueba debidamente certificada. Ese era su deber. No lo hizo. Nada hay en qué avalar esa tesis. No hay indicio de que Carmen Figueroa estuviera excitada o actuara de manera irreflexiva al alegadamente manifestar que Rexach Bonet la había impactado. Sobre el particular, los autos originales y el récord limitado están totalmente huérfanos, incluso de la forma o manera en que hizo esta declaración. Los únicos indicadores objetivos tienden a demostrar lo contrario. La colisión no revistió la violencia generada por accidentes en que ha mediado exceso de velocidad. Los daños materiales no fueron significativos y ella no experimentó lesiones corporales. Si algo la prueba, de manera objetiva, permite razonablemente concluir es que no estaba excitada y perturbada. Salvo conjeturar que se equivocó, podemos inferir que fría y calculadamente mintió sobre su teléfono —y presumiblemente sobre su nombre— para aprovechar de ese modo y desaparecer del lugar. Recuérdese que ni aun combinados los números de teléfono que suministró permitieron al demandante Nieves López localizarla.

## III

Finalmente, examinamos la aplicabilidad de la doctrina de *res ipsa loquitur*. En *Valle v. Amer. Inter. Ins. Co.*, 108 D.P.R. 692, 697 (1979), nos expresamos —en torno a la responsabilidad por la colisión en cadena de automóviles detenidos— sobre la necesidad de establecer nexo causal "entre el evento culposo y el daño sufrido . . .". Acto seguido

dijimos: "*En caso de concurrencia de causas hay que determinar qué causa es la eficiente.* '[C]uando sean varias las concurrentes', escribe Santos Briz en la primera de estas obras, 'hay que estimar como decisiva la que por sus circunstancias determina el daño (sent. de 30 de enero de 1954).' *Op. cit.*, pág. 225." (Énfasis suplido.) Íd.

Según antes indicado, la prueba presentada por Nieves López no pudo demostrar que la conducta de Rexach Bonet fue la causa eficiente y decisiva del accidente automovilístico. Por tal razón, invoca la doctrina de *res ipsa loquitur.* No tiene razón.

Observamos que "el único efecto de la aplicación de la doctrina de *res ipsa loquitur*, es de establecer una inferencia permisible a favor de la parte actora". *Pérez Rivera v. Olazagasti Fiol*, 90 D.P.R. 779, 786 (1964). Sin embargo, para ello es necesario que concurran los requisitos siguientes: (1) el accidente debe, de ordinario, no ocurrir a no ser por la negligencia de otra persona; (2) *debe causarlo una agencia o instrumentalidad dentro del control exclusivo del demandado*, y (3) no debe ocurrir debido a acción voluntaria alguna del demandante. *Soc. de Gananciales, Etc. v. Presbyterian Hosp.*, 88 D.P.R. 391, 397–398 (1963).

La doctrina no es aplicable cuando puede existir alguna otra causa probable del accidente de la cual pueda inferirse que no hubo negligencia. *Cintrón v. A. Roig, Sucrs.*, 74 D.P.R. 1028, 1036 (1953). Véase H.M. Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1986, Vol. I, Cap. VII, págs. 397–398. En *Kirchberger v. Gover*, 76 D.P.R. 907, 912 (1954), extendimos dicha doctrina a situaciones en que un vehículo choca a otro debidamente estacionado durante varias horas de la noche. No nos pronunciamos en torno a su aplicabilidad a casos de choques por la parte trasera de automóviles temporalmente detenidos.

██ La regla mayoritaria adoptada en Estados Unidos permite que sea invocada cuando un vehículo de motor impacta a otro así detenido.(3) *Millonig v. Bakken,* 334 N.W.2d 80 (1983); *Tracy v. Graf,* 550 P.2d 886 (Colo. 1976); *Turner v. Wallace,* 217 N.E.2d 11 (1966); *Harding v. MacDougal,* 79 Cal. Rptr. 772 (1969); *Orlando v. Northcutt,* 441 P.2d 58 (Ariz. 1968); *Beck v. Kessler,* 45 Cal. Rptr. 337 (1965); *Bell's Fish and Poultry Company v. Jenkins,* 227 So. 2d 512 (1969); *Rivers v. Bauer,* 79 F. Supp. 403 (1948); 11 *Blashfield Automobile Law and Practice* Secs. 418.1–418.3 (1977); Anotación, *Res Ipsa Loquitur–Automobile Collision,* 151 A.L.R. 870; Anotación, *Auto–Stopping—Res Ipsa Loquitur,* 79 A.L.R.2d 153; W.P. Keeton, *Prosser and Keeton on Torts,* 5ta ed., Minnesota, Ed. West Publishing Co., 1984, Sec. 39, pág. 251. Empero, su aplicación no es automática. Depende de las circunstancias particulares de la colisión. Para beneficiarse de la inferencia permisible de negligencia que la doctrina permite establecer, el actor debe demostrar preliminarmente las circunstancias bajo las cuales se ocasionó el accidente. Véanse: *Norris v. Gatts,* 738 P.2d 344 (Alaska

---

(3) En la jurisdicción norteamericana existe también la doctrina conocida como el *rear-end collision,* que tiene un efecto procesal análogo al de *res ipsa loquitur. Wagoner v. Hurt,* 554 S.W.2d 587, 589 (1977), la expone concisamente:

"La doctrina de 'colisión por la parte posterior' [*rear-end collision*] sencillamente establece que si un conductor tiene su vehículo de motor en una parte de la carretera donde debería o tendría derecho a tenerlo en vista de la dirección en que viaja y alguna otra persona que viaja detrás de él en la misma dirección alcanza su vehículo y lo choca por detrás, la prueba de que hubo una colisión constituye un caso prima facie de negligencia específica en contra del conductor que viaja detrás.

. . . . . . . .

"La colisión por la parte trasera sugiere negligencia *específica* . . . nuestros tribunales han restringido la teoría de resarcimiento en casos de colisión por la parte posterior a aquellos casos en que el *hecho* de la colisión permite inferir la negligencia del demandado." (Traducción nuestra.)

Véanse, también: *Jensen v. Papas,* 684 S.W.2d 524 (1984); *Clevenger v. Walters,* 419 S.W.2d 102 (1967); 12 *Blashfield Automobile Law and Practice* Sec. 439.4 (1977).

1987); *Graf v. Tracy*, 568 P.2d 467 (Colo. 1977); *Evans v. Byers*, 331 A.2d 138 (D.C. 1975); *Conner v. Brkich*, 481 P.2d 894 (Ariz. 1971); *Varisco v. Malovin*, 255 N.E.2d 190 (1970); *Frazier v. Cordialino*, 253 N.E.2d 843 (1969); *Bondar v. Ar Jay Paint Company*, 191 N.Y.S.2d 767 (1959); Anotación, *Res Ipsa Loquitur—Directing Verdict*, 97 A.L.R.2d 522.

Según los hechos probados, dicha doctrina sería aplicable contra Carmen Figueroa, pero no contra Rexach Bonet. En cuanto a éste, el récord carece de prueba de la cual pueda inferirse negligencia de su parte. La instrumentalidad —automóvil— que ocasionó el accidente no se encontraba bajo el control exclusivo de Rexach Bonet, puesto que el de Carmen Figueroa se hallaba entre el del demandante Nieves López y el de Rexach Bonet. Este hecho de por sí excluye la configuración del segundo requisito de la doctrina de *res ipsa loquitur.*

Ciertamente, el choque pudo muy bien deberse a la negligencia exclusiva de Carmen Figueroa. Según antes indicado, el informe de la Policía tiende así a sostenerlo. Ésta no fue parte en el pleito. Recuérdese que Nieves López atestó que escuchó un (1) solo impacto. Salvo que le fallara el sentido auditivo, ello es incompatible con la negligencia atribuible a Rexach Bonet. En el curso ordinario de los eventos humanos, resulta un tanto extraño oir un solo impacto ante una colisión o choque en cadena de automóviles detenidos. En resumen, las conclusiones del tribunal de instancia sostienen su decreto desestimatorio.

*Se dictará la correspondiente sentencia.*

El Juez Asociado Señor Rebollo López emitió opinión disidente, a la cual se unieron la Juez Asociada Señora Naveira de Rodón y el Juez Asociado Señor Alonso Alonso.

—O—

Opinión disidente emitida por el Juez Asociado Señor Rebollo López, a la cual se unen la Juez Asociada Señora Naveira de Rodón y el Juez Asociado Señor Alonso Alonso.

*Coincidimos* con la opinión mayoritaria emitida por el Tribunal en el presente caso, a los efectos de que la manifestación que alegadamente le hiciera la Sra. Carmen Figueroa al demandante recurrente Nieves López *no* era admisible en evidencia bajo las disposiciones de la *Regla 64(A)(5)* de Evidencia, 32 L.P.R.A. Ap. IV, para el Tribunal General de Justicia. No hay duda de que no habiendo demostrado Nieves López a nivel de instancia que hubiera realizado diligencias suficientes y razonables para localizar a la señora Figueroa, esta persona no podía ser considerada como un "testigo no disponible" por lo que dicha manifestación *no* era admisible en evidencia *bajo esa disposición legal en particular.*

*Diferimos*, sin embargo, de la determinación a la que llega una mayoría de los integrantes del Tribunal de que el testimonio objetado no era admisible al amparo de lo dispuesto por la *Regla 65(B)* de Evidencia, 32 L.P.R.A. Ap. IV. No obstante ser sustancialmente correcta la exposición doctrinaria que al respecto hace el Tribunal, incurre en error al aplicar la misma a los hechos del caso. Ello primordialmente debido a que el Tribunal, al confundir la etapa de admisibilidad de evidencia con la etapa de la aquilatación de la prueba admitida y adjudicación final del caso, usurpa la función del juzgador de los hechos a nivel de instancia.

*Disentimos, en adición*, por cuanto somos del criterio que la declaración objetada resulta ser igualmente admisible en evidencia bajo las disposiciones de la *Regla 65(A)* de Evidencia, 32 L.P.R.A. Ap. IV, situación que el Tribunal, inexplicablemente, pasa completamente por alto en la opinión mayoritaria que emite. Veamos.

# I

Establece la *Regla 65(B)* de Evidencia, *supra*, en lo pertinente, que:

Es admisible como excepción a la regla de prueba de referencia aunque el declarante esté disponible como testigo:

. . . . . . .

(B) *Declaraciones espontáneas por excitación*: Una declaración hecha mientras el declarante estaba bajo la influencia de excitación causada por la percepción de un acto, evento o condición y la declaración se refiere a dicho acto, evento o condición.

Como correctamente se expresa en la opinión mayoritaria emitida, en *Pueblo v. Cortés del Castillo*, 86 D.P.R. 220, 229 (1962) —reiterado en *Pueblo v. García Reyes*, 113 D.P.R. 843, 853 (1983)— establecimos los *tres* requisitos que tienen que concurrir para que pueda entrar en vigor esta excepción a la prueba de referencia, a saber: "(1) un evento suficientemente alarmante que produzca una manifestación espontánea e irreflexiva; (2) falta de tiempo para inventar la manifestación; y (3) la manifestación debe referirse *al evento* que la causa." (Énfasis en el original.)

Como surge de una lectura de la opinión mayoritaria emitida, el Tribunal —aun cuando reconoce que una "colisión entre automóviles detenidos puede catalogarse como un evento excitante o alarmante susceptible de provocar declaraciones espontáneas" (opinión mayoritaria, pág. 435)— concluye que si "algo la prueba, de manera objetiva, permite razonablemente concluir es que no estaba [la señora Figueroa] excitada y perturbada" (íd., pág. 436); ello en vista de que "fría y calculadamente mintió sobre su teléfono —y presumiblemente sobre su nombre— para aprovechar de ese modo y desaparecer del lugar" (íd.).

En primer lugar, no debemos olvidarnos que los seres humanos respondemos de distintas maneras ante determinadas circunstancias. Así, por ejemplo, todos hemos sido tes-

tigos de situaciones en que personas, ante la muerte de un ser querido, reaccionan en forma visiblemente incontrolada, necesitando de la ayuda de masivas dosis de barbitúricos para calmar sus nervios, mientras que otras igualmente afectadas reaccionan estoicamente, sus profundos sentimientos apenas perceptibles.

El hecho de que la señora Figueroa, al verse envuelta en este accidente, no haya reaccionado en forma histérica, no quiere decir que ella no hubiera experimentado —en palabras de la mayoría del Tribunal— un evento suficientemente alarmante que fuera capaz de producir una manifestación espontánea e irreflexiva de su parte.

La mayoría, en apoyo de su conclusión de que la señora Figueroa no estaba excitada, señala que dicha dama tan poco excitada y perturbada estaba, que "fría y calculadamente *mintió* sobre su teléfono . . .". (Énfasis suplido.) Opinión mayoritaria, pág. 436. ¿En qué basa el Tribunal su determinación de que esta señora mintió?

La misma está predicada en el *hecho escueto* de que la señora Figueroa no pudo ser localizada por el demandante López Nieves en el teléfono que ella le proporcionara. Sabido es que todo lo que se necesita para que un número de teléfono resulte "equivocado" lo es un cambio en tan sólo *uno* de sus dígitos. Ese hecho —el de no poder ser localizada— ¿es suficiente para concluir que mintió?

¿Acaso no es posible que en la excitación del momento —aun cuando externamente no demostrara la misma— ella le brindara a López Nieves un número equivocado? El hecho de que esa persona brindara un número telefónico donde posteriormente no pudiera ser localizada, ¿es un hecho tan insólito y único como para que inescapablemente se pueda concluir que esa persona mintió en lugar *de meramente haberse equivocado debido a la situación de tensión por la que en ese momento atravesaba*? ¿Resulta razonable la conclu-

sión del Tribunal? Nos parece que, cuando menos, tan razonable resulta ser una inferencia como la otra.

Un examen desapasionado de los hechos, tal como los expone el Tribunal en la opinión mayoritaria que emite, nos convence de que no existe razón jurídica válida alguna para denegar la admisión en evidencia, bajo la *Regla 65(B)* de Evidencia, *supra*, del testimonio del demandante López Nieves en relación con las manifestaciones que alegadamente le hiciera la señora Figueroa. Dicho testimonio, prima facie, cumple con los tres requisitos exigidos por la citada Regla 65(B) y por nuestra jurisprudencia. *Pueblo v. Cortés del Castillo*, ante; *Pueblo v. García Reyes*, ante.

Ello es así por cuanto la prueba incontrovertida en el presente caso es a los efectos de que la señora Figueroa experimentó "un evento suficientemente alarmante" (el accidente) que produjo una "manifestación espontánea e irreflexiva" (que había chocado a López Nieves por razón de que el demandado Rexach Bonet, a su vez, la había impactado a ella) no contando con "tiempo para inventar la manifestación" (lo expresó *inmediatamente* después de ocurrido el accidente), y dicha manifestación se refería "*al evento* que la causa" (el accidente). *Pueblo v. Cortés del Castillo*, ante. Véase *Pueblo v. García Reyes*, ante.

El error en que incurre la mayoría del Tribunal en el presente caso consiste en que confunde y mezcla *las dos etapas y funciones* que tiene todo juez que preside un proceso a nivel de instancia en relación con la prueba que es ofrecida y presentada en evidencia por las partes durante el transcurso del mismo: (1) *la de admisibilidad* propiamente de la prueba ofrecida y (2) *la de aquilatación* de la prueba admitida *y adjudicación* del caso. La dificultad para concebir lo anteriormente expuesto en el presente caso se debe a que en el mismo, como se trata de un proceso civil, una misma persona tiene las dos funciones. Se trata, sin embargo, de *dos etapas separadas* que conllevan la realización de *dos funciones dis-*

*tintas.* La diferencia entre ellas se percibe claramente en casos en que el juzgador de los hechos es el jurado, ya sea en casos criminales en nuestra jurisdicción, ya en casos civiles en la jurisdicción federal.

El caso de autos, sin embargo, presenta una situación bastante sencilla. No obstante el juez que presidió el proceso tuvo que llevar a cabo las dos mencionadas funciones, debe recordarse que la prueba sobre las circunstancias en que ocurre la manifestación de la señora Figueroa *fue una incontrovertida.* No habiendo conflicto de prueba que dirimir en relación con la misma,(1) siendo ésta una prueba factible y posible, y cumpliéndose con los tres requisitos exigidos por la citada Regla 65(B) de Evidencia y por la jurisprudencia aplicable, dicha prueba, repetimos, era admisible en evidencia. Posteriormente, ya en la etapa de adjudicación final del caso, le correspondía al juez de instancia —en su función de juzgador de los hechos— determinar y decidir qué credibilidad o valor probatorio merecía la misma.

Es por ello que resulta errónea la actuación del Tribunal en el presente caso. Los argumentos que utiliza la mayoría en apoyo de su posición de que la prueba en controversia no era admisible en evidencia realmente *son de la competencia del juez de instancia en su función de juzgador de los hechos.* En otras palabras, y en resumen, al Tribunal embarcarse en conjeturas y especulaciones sobre si la señora Figueroa mintió o no, *está usurpando la función del magistrado de instancia en la etapa de la adjudicación del caso.*

---

(1) No hay duda que, aun en la etapa de admisibilidad, el juez en muchas ocasiones se ve en la obligación de dirimir credibilidad, por cuanto la prueba al respecto es conflictiva. Una vez se resuelve que la prueba es admisible, el juez al resolver el caso, en su función de juzgador de los hechos, adjudica *finalmente* credibilidad. Un ejemplo de ello lo constituye las disposiciones de la Regla 9(C) y (E) de Evidencia, 32 L.P.R.A. Ap. IV, relativas las mismas a la admisibilidad de la confesión del acusado en un proceso criminal que se ventila por jurado.

## II

La manifestación que alegadamente le hiciera la señora Figueroa al demandante recurrente Nieves López *era igualmente admisible* en evidencia bajo las disposiciones de la *Regla 65(A)* de Evidencia, *supra*. Dicha disposición legal, en lo pertinente, establece que:

Es admisible como excepción a la regla de prueba de referencia aunque el declarante esté disponible como testigo:

(A) *Declaraciones contemporáneas a la percepción*: Una declaración narrando, describiendo o explicando un acto, condición o evento percibido por el declarante y hecha mientras el declarante percibía dicho acto, condición o evento, o inmediatamente después.

De entrada, debemos advertir que bajo esta excepción —al igual que bajo las demás excepciones contempladas en la Regla 65 de Evidencia, *supra*— "la admisibilidad de la declaración no está condicionada a la no disponibilidad del declarante para comparecer como testigo". E.L. Chiesa, *Práctica Procesal Puertorriqueña: Evidencia*, San Juan, Pubs. J.T.S., 1985, Vol. I, Cap. VIII, pág. 373. Ello se debe a que estas excepciones están revestidas de suficientes garantías circunstanciales de confiabilidad, por lo que se prescinde del requisito de no disponibilidad del declarante. Íd.; 4 *Weinstein's Evidence* Sec. 803[01] (1988).

En el caso de las declaraciones contemporáneas a la percepción, la garantía circunstancial de confiabilidad radica en "que la contemporaneidad entre el evento y la declaración es un obstáculo contra la fabricación". Chiesa, *op. cit.*, pág. 375. Lo que pretende recoger esta excepción es aquella declaración espontánea que se produce mientras se percibe un evento, o inmediatamente después, y la cual no se encuentra atada a un momento de reflexión por parte del declarante.

*Weinstein*, supra, Sec. 803(1)[01].(²) Debe señalarse, sin embargo, que en esta clase de situaciones, la contemporaneidad aunque esencial no es absoluta. Algún tiempo debe ser permitido para trasladar lo percibido en una declaración. E.W. Clearly, *McCormick on Evidence*, 3ra ed., Minnesota, Ed. West Publishing Co., 1984, Sec. 298. "La contemporaneidad absoluta es prácticamente imposible, pues el presente en un instante se ha convertido en pasado. Por eso la regla añade, al final, '*o inmediatamente después*'. Si el intervalo de tiempo transcurrido entre el suceso y la declaración es lo suficientemente extenso como para eliminar la razón de ser de la excepción, el tribunal debe excluir la declaración." Chiesa, *op. cit.* Sin embargo, no hay una regla absoluta para determinar qué intervalo de tiempo es lo suficientemente extenso como para no admitir una declaración bajo esta excepción.(³) En última instancia, la investigación debe estar dirigida a determinar si a la luz de las circunstancias particulares de cada caso, el lapso de tiempo que ha transcurrido entre el evento y la declaración le ha permitido al declarante reflexionar sobre lo percibido. Clearly, *op.cit.*

En síntesis, para que una declaración sea admisible bajo esta excepción se deben satisfacer los siguientes requisitos:

---

(²) En lo que respecta a las declaraciones espontáneas por excitación, como señala la mayoría del Tribunal, la garantía circunstancial de éstas "yace en la ocurrencia de un evento o suceso de tal naturaleza o intensidad que genere una expresión espontánea. De ordinario, la combinación física y psicológica de estos factores paraliza temporalmente la facultad de reflexión, y ello reduce las probabilidades de fabricación de la declaración. *Pueblo v. Cortés del Castillo*, 86 D.P.R. 220, 229 (1962); [E.L.] Chiesa, [*Práctica Procesal Puertorriqueña: Evidencia*, San Juan, Pubs. J.T.S., 1985, Vol. I, Cap. VIII,] pág. 377; [E.W.] Clearly, [*McCormick on Evidence*, 3ra ed., Minnesota, Ed. West Publishing Co., 1984,] Sec. 297; [4] *Weinstein's* [*Evidence*, Sec. 804(a)[01] (1988)]". Opinión mayoritaria, pág. 435.

(³) Sobre este particular, véase *United States v. Obayagbona*, 627 F. Supp. 329, 339–340 (E.D.N.Y. 1985), donde se admite bajo esta excepción una declaración hecha quince minutos después de haberse percibido el suceso; *United States v. Blakey*, 607 F.2d 779, 784–786 (7mo Cir. 1979), en donde se admite una declaración hecha veintitrés minutos después de haberse percibido el evento.

(1) la declaración tiene que ser hecha mientras el evento o condición es percibido o inmediatamente después; (2) el declarante tiene que haber percibido el evento o condición aunque no haya sido partícipe del mismo; (3) la declaración sólo debe limitarse a explicar, narrar o describir el suceso o condición percibido, y (4) el intervalo de tiempo transcurrido entre lo percibido y lo declarado debe ser tal que no le permita al declarante reflexionar sobre lo que ha visto. *Weinstein*, supra; J.R. Waltz, *The Present Sense Impression Exception to the Rule Against Hearsay: Origins and Attributes*, 66 (Núm. 4) Iowa L. Rev. 869, 876–882 (1981).

Un somero examen de los hechos particulares de este caso es más que suficiente para poder concluir que el testimonio objetado era admisible en evidencia bajo la citada Regla 65(A). Tenemos que: (1) la manifestación de la señora Figueroa fue hecha *inmediatamente después de ocurrido el evento* (el accidente); (2) la señora Figueroa ciertamente fue una *partícipe del mismo*;[4] (3) la manifestación se limitó a *explicar el accidente,* y (4) habiendo sido realizada dicha manifestación inmediatamente después de ocurrido éste, se puede razonablemente concluir que la señora Figueroa *no tuvo tiempo para reflexionar sobre ello.*

### III

En resumen, disentimos por cuanto la manifestación que alegadamente le hiciera el día del accidente la Sra. Carmen Figueroa al demandante Nieves López *era admisible en evidencia tanto bajo las disposiciones de la Regla 65(B) como las de la Regla 65(A) de Evidencia,* supra. Siendo ello así, revocaríamos la sentencia recurrida.

---

[4] Es importante enfatizar que la "participación" de la Sra. Carmen Figueroa en el accidente ocurrido no está en controversia.