# 2002 DTA 102

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL IV DE AGUADILLA Y MAYAGÜEZ
## PANEL I

MUNICIPIO DE RINCON y RUBEN CARO, ALCALDE DEL MUNICIPIO DE RINCON
Apelada

v.

JULIO C. NAZARIO VELEZ y GLADYS OYOLA,
LA SOCIEDAD LEGAL DE GANANCIALES QUE COMPONEN
Apelantes

GENERAL ACCIDENT INSURANCE CO. PR LIMITED
Demandada y Demandante de Co-parte

JULIO NAZARIO VELEZ, FULANA DE TAL y
LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS
Apelantes

v.

MUNICIPIO DE RINCON, EL HONORABLE RUBEN CARO y su esposa; y otros
Apelados

Núm. KLAN-01-00858 / KLAN-01-00863

San Juan, Puerto Rico, a 29 de mayo de 2002

Panel integrado por su Presidenta, la Juez López Vilanova,
el Juez Córdova Arone y la Juez Feliciano Acevedo

Córdova Arone, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El Ing. Julio Nazario Vélez (ingeniero Nazario), y General Accident Insurance Company (GA), apelan una sentencia dictada el 29 de junio de 2001 por el Tribunal de Primera Instancia, Sala Superior de Aguadilla. Mediante la misma, dicho foro declaró con lugar una demanda sobre incumplimiento de contrato presentada por el Municipio de Rincón (el Municipio), en contra del ingeniero Nazario y GA. Examinemos los hechos pertinentes.

### I

La génesis procesal del caso de autos se remonta al año 1992, fecha en que el Municipio le adjudicó al ingeniero Nazario la buena pro de una subasta para la construcción del Proyecto Número AAA J-91-60-12, denominado como Sistema de Alcantarillado Sanitario de la Comunidad Stella, en Rincón, Puerto Rico.

El 23 de diciembre de 1992, GA expidió a favor del ingeniero Nazario una fianza de cumplimiento y de pago (*"payment and performance bond"*) para el referido proyecto.

El 3 de febrero de 1993, el Municipio suscribió un contrato con el ingeniero Nazario para la construcción del proyecto. La fianza de ejecución se incorporó e hizo formar parte del contrato de construcción del sistema de alcantarillados.

El 29 de septiembre de 1995, el Municipio presentó en contra del ingeniero Nazario y GA una demanda sobre *injunction*, cumplimiento específico de contrato y daños y perjuicios. El 9 de octubre de 1995, el ingeniero Nazario demandó al Municipio, por incumplimiento de contrato y daños y perjuicios. El Tribunal de Primera Instancia consolidó ambos casos.

Luego de varios incidentes procesales, los cuales resulta innecesario detallar, el 29 de junio de 2001, el Tribunal de Primera Instancia dictó la sentencia apelada. Declaró con lugar la demanda instada por el Municipio en contra del ingeniero Nazario y GA y sin lugar la demanda presentada por el ingeniero Nazario en contra del Municipio. El foro sentenciador condenó al ingeniero Nazario y GA al pago solidario de $335,000.00, indemnización pactada en una cláusula penal en caso de incumplimiento del contrato; así como al pago de $180,000.00, por concepto del costo del asfalto que el Municipio tuvo que incurrir debido al incumplimiento del ingeniero Nazario con su obligación contractual. El Tribunal de Primera Instancia determinó que de la cuantía a la que vienen obligados a pagar el ingeniero Nazario y GA, deben deducirse $26,000.00, correspondientes a los materiales y equipos que el ingeniero Nazario dejó en el proyecto, luego de haber sido declarado en *"default"* por el Municipio. Finalmente, el foro apelado condenó a GA al pago de $10,000.00 por concepto de honorarios de abogado.

No conforme, el ingeniero Nazario apeló ante nos; GA también; por lo que consolidamos ambos recursos. El escrito de apelación del ingeniero Nazario contiene nueve señalamientos de error. En éstos le imputa al tribunal sentenciador haber incidido al: (1) omitir determinar que el Municipio incumplió el contrato, ya que alegadamente no pagó puntualmente las certificaciones; (2) no determinar que las obras que realizó cumplieron con las especificaciones y exigencias del contrato; (3) determinar que la demora en concluir la obra le era imputable, ya que se debió a la incuria del Municipio y a problemas ajenos a la construcción; (4) concluir que

violó los términos del contrato al no repavimentar las trincheras dentro del término de 5 días siguientes de haber roto y abierto las mismas, ya que lo pactado era que se repavimentarían las trincheras a los 5 días de haberse efectuado la inspección; (5) no determinar que tenía derecho a una compensación adicional por las diferencias entre el plano y las condiciones del terreno bajo la superficie; (6) no determinar que una decisión de la Autoridad de Acueductos y Alcantarillados (AAA), referente a que las obras incluidas en la certificación número seis eran aceptables, obligaba a las partes; (7) determinar que el Municipio lo declaró correctamente en incumplimiento y que él no tenía derecho a declarar al Municipio en incumplimiento; (8) computar la suma que viene obligado a pagar; y (9) determinar que no certificó mensualmente, debido a que se pactó en el contrato que éste sometería las certificaciones con una frecuencia no mayor de cada 30 días.

Por su parte, el escrito de apelación de GA contiene nueve señalamientos de error:

*"PRIMER ERROR: Erró el Honorable Tribunal de Instancia al no dar efecto legal a hechos que reconoció establecidos y estipulados, a saber: la consecuencia de que el Municipio pagó después del "default", obra correctamente ejecutada que se negó a inspeccionar y a pagar "pre-default".*

*SEGUNDO ERROR: Erró el Honorable Tribunal de Instancia al ignorar hechos no controvertidos, admitidos y uniformemente establecidos por la prueba, consecuentemente privando a la compareciente de los derechos constitucionales fundamentales que de ellos emanan. Entre otros: el acuerdo de delegar en la AAA la inspección de la tubería para que su determinación sobre corrección o incorrección de la construcción obligue a todos, y que aprobada la instalación de la tubería, tan sólo restaba la construcción de la estación de bombas en terrenos que el Municipio nunca adquirió ni obtuvo autorización para invadir.*

*TERCER ERROR: Erró el Honorable Tribunal de Instancia al concluir que la prueba presentada demostró que no existió ningún tipo de excusa o justificación para los incumplimientos.*

*CUARTO ERROR: Erró el Honorable Tribunal de Instancia al imponer responsabilidad al contratista por errores del dueño, como diseño, elevaciones en los planos, insuficientes acometidas, falta de registros y tardía aprobación del sometimiento de registros.*

*QUINTO ERROR: Erró el Honorable Tribunal de Instancia al no concluir como hechos establecidos aquéllos que emergen de la evidencia estipulada.*

*SEXTO ERROR: Erró el Honorable Tribunal de Instancia al pretender liquidar el contrato y efectuar cargos sin tomar en consideración los fondos remanentes por desembolsar, el costo en completar la obra y los sobrantes de fondos correspondientes al contratista original.*

*SEPTIMO ERROR: Erró el Honorable Tribunal de Instancia al no admitir en evidencia la orden de cambio número dos y las admisiones allí contenidas.*

*OCTAVO ERROR: Erró el Honorable Tribunal de Instancia al no considerar un incumplimiento del Municipio la no adquisición de los terrenos para la estación de bombas, y que considerase como incumplimiento del contratista el que éste no invadió terrenos ajenos, no cometió el delito de entrada a heredad ajena y no edificó de mala fe en terreno ajeno.*

*NOVENO ERROR: Erró el Honorable Tribunal de Instancia al determinar temeridad tan sólo ignorando los hechos establecidos."*

Contamos con el beneficio de la comparecencia del Municipio, por lo que luego de estudiar el voluminoso expediente del caso de autos, estamos en condiciones de resolver el recurso de epígrafe. Así procedemos a

hacerlo.

## II

Comenzaremos por discutir el cuarto señalamiento de error esbozado por el ingeniero Nazario. Este arguye que el Ilustrado Foro Sentenciador incurrió en error al efectuar la determinación de hechos número 53, la cual reza así: *"El ingeniero Nazario, por disposición contractual, venía obligado, dentro de los cinco (5) días siguientes de haber roto y abierto las trincheras, proceder a repavimentar y reparar lo dañado para volver las calles a su estado original"*. ■ El ingeniero Nazario sostiene que lo contratado era que se repavimentarían las trincheras a los cinco (5) días de haberse efectuado la inspección y aprobación de las tuberías.

Para disponer de este señalamiento de error, basta remitirnos a la sección C8 del contrato, relativa a la demolición y reemplazo del pavimento de las calles. En el inciso 3 de la referida sección, las partes pactaron que: *"The contractor shall start the permanent replacement of street or highway surfaces not later than five (5) days after having installed the pipe and backfilled the excavation".*

Debemos recordar que cuando los términos de un contrato son claros y no dejan lugar a dudas sobre la intención de las partes contratantes, debe prevalecer el sentido literal de sus cláusulas. Art. 1233 del Código Civil, 31 L.P.R.A. sec. 3471; *Mayagüez Hilton v. Betancourt*, **2002 J.T.S. 29**.

Una vez finalizado un contrato, su validez y cumplimiento no puede dejarse al arbitrio de una de las partes contratantes. Art. 1208 del Código Civil, 31 L.P.R.A. sec. 3373.

En atención a lo expresado, no se cometió el cuarto señalamiento de error contenido en el escrito de apelación del ingeniero Nazario.

## III

El ingeniero Nazario, en su octavo señalamiento de error, argumenta que el foro sentenciador omitió acreditar al contratista el 10% del retenido, ascendente a $147,883.43. Sobre este extremo también versa el sexto señalamiento de error contenido en el escrito de apelación de GA. Les asiste la razón.

Sobre este particular, las partes pactaron, en la sección 19.1 del contrato, relativa a los pagos al contratista, que de cada certificación aprobada del ingeniero Nazario, el Municipio, al efectuar el pago, retendría una cantidad equivalente al 10% de la certificación. Cuando la obra fuera sustancialmente completada, las cantidades retenidas serían pagadas al ingeniero Nazario.

Sin embargo, en el supuesto que ocurrió en el caso de autos, el contrato, en su cláusula 18.2, estipulaba que:

*"If the CONTRACTOR ... violates any provision of the CONTRACT..., then the OWNER may, without prejudice to any right or remedy ... terminate the services of the CONTRACTOR and take possession of the PROJECT and of all materials, equipment, tools, construction equipment and machinery thereon owned by the CONTRACTOR, and finish the WORK by whatever method the OWNER may deem expedient. In such case, the CONTRACTOR shall not be entitled to receive any further payment until the work is finished. If the unpaid balance of the CONTRACT PRICE exceeds the direct and indirect costs of completing the PROJECT, including compensation for additional professional services, such excess SHALL BE PAID TO THE CONTRACTOR. If such costs exceed such unpaid balance, the CONTRACTOR will pay the difference to the OWNER."* ■

En virtud de las consideraciones expuestas, corresponde al foro apelado determinar si el balance retenido excede o no los costos de completar la obra.

## IV

El ingeniero Nazario, en su noveno señalamiento de error ataca la determinación de hechos número 33 formulada por el Tribunal de Primera Instancia, la cual lee así: *"La prueba aportada por las partes demostró de forma incontrovertida que el Sr. Julio Nazario no sometió las certificaciones para pago o "Monthly Partial Payments" en tiempo, según requería el contrato"*. El ingeniero Nazario recurre a interpretar el contrato y concluye que las cláusulas relativas a la forma de certificar, no le imponen una obligación de hacerlo mensualmente. No le asiste la razón.

De un simple examen de la cláusula 19.1 del contrato y del inciso 28 de las *"Additional Instructions To Bidders"*, se desprende que no hay margen para interpretación. El ingeniero Nazario tenía que preparar mensualmente certificaciones, para ser aprobadas y luego proceder a su pago.

El contrato es ley entre las partes, y a tales efectos, el Art. 1044 del Código Civil, 31 L.P.R.A. sec. 2994, dispone: *"Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse al tenor de los mismos"*.

## V

El ingeniero Nazario, en su sexto señalamiento de error, y GA, en sus señalamientos de error primero y segundo, cuestionan el que el foro sentenciador no determinara que una opinión de la AAA en cuanto a que las obras incluidas en la certificación número 6 eran aceptables, tuviera la consecuencia de que la totalidad de la obra realizada por el ingeniero Nazario fue correctamente edificada. GA añade que el Municipio no podía declarar al ingeniero Nazario en *"default"*, toda vez que no le había pagado a éste la certificación número 6. Inciden al así razonar.

El Tribunal de Primera Instancia determinó, como cuestión de hecho, que el ingeniero Nazario tuvo múltiples problemas con la instalación de las tuberías sanitarias, en particular con el control de las aguas y debido a la metodología utilizada por éste. El ingeniero Nazario no siguió las instrucciones del manufacturero. Nunca utilizó la tecnología de Well Point.

El foro sentenciador determinó, como cuestión de hecho, que la metodología utilizada por el ingeniero Nazario impedía que se le pudieran hacer las pruebas requeridas a las tuberías instaladas por éste. El inspector estaba impedido de certificar la instalación de las tuberías, ya que no podía verificar mediante las pruebas si las tuberías estaban correctamente instaladas, a menos que se sumergieran buzos con tanques de oxígeno para verificarlas. ■ El foro apelado también determinó que el ingeniero Nazario fue puesto sobre aviso, tanto por el inspector como por el supervisor de la obra, sobre el hecho de que instalar tuberías bajo el agua sin tener los registros, podía traerle problemas, ya que impedía a la inspección del proyecto hacer las pruebas correspondientes para verificar la corrección de la instalación, por lo que lo idóneo era que instalaran primero los registros y luego las tuberías. El ingeniero Nazario hizo caso omiso de dichos señalamientos. ■

Todo esto conllevó que las partes acordaran que los pagos se retuvieran hasta que un inspector de la AAA aprobara las respectivas instalaciones, después de realizar pruebas de luz, de infiltración y de nivel. ■

En cuanto a la certificación número seis, luego de efectuar todas las pruebas pertinentes, la AAA emitió una carta aceptando los tramos de la tubería, y el Municipio procedió al pago de la misma. ■

## VI

El ingeniero Nazario, en los señalamientos de error primero, segundo, tercero, quinto y séptimo esbozados por su escrito de apelación, se inclina a atacar la apreciación de la prueba efectuada por el foro sentenciador. GA, en sus señalamientos de error tercero, cuarto, quinto y octavo, también cuestiona la apreciación de la prueba realizada por dicho foro. Discutiremos conjuntamente los referidos señalamientos de error.

El ingeniero Nazario, en el primer señalamiento de error apuntado en su escrito de apelación, sostiene que el Tribunal de Primera Instancia debió determinar, como cuestión de hecho, que el Municipio incumplió el contrato, al no pagar puntualmente las certificaciones.

Al examinar el contrato, encontramos que el proceso de pago consistía en varias etapas. El ingeniero Nazario tenía que someter certificaciones, las cuales eran examinadas por un ingeniero, quien las aprobaba y las pasaba al Municipio, o por el contrario, si encontraba razones para denegar la aprobación, las enviaba al ingeniero Nazario para que las corrigiera y las volviera a someter. El Municipio tenía que efectuar el pago 10 días después de que le fuera presentada la certificación debidamente aprobada. ■

El ingeniero Nazario no nos ha puesto en condiciones de evaluar si el Municipio no pagó a tiempo las certificaciones. No nos presenta evidencia alguna de las fechas y el lapso de tiempo que transcurrió entre cada etapa del proceso de pago. Tampoco reseña que él testificó que no certificaba mensualmente y que admitió que la metodología que utilizó impedía y retrasaba la aprobación de las certificaciones. ■

Sabido es que este Tribunal no puede descansar en las meras alegaciones para revisar los dictámenes judiciales. Es doctrina firmemente establecida que los tribunales apelativos no podemos fallar a base de *"los hechos que nos presentan las partes en sus alegatos, sino que tenemos que atenernos a las conclusiones de hechos del tribunal de instancia y a la transcripción de la evidencia"*. E.L.A. v. Mercado Carrasquillo, 104 D. P.R. 784, 789 (1976).

Por otro lado, el ingeniero Nazario sostiene en su segundo señalamiento de error que el Tribunal de Primera Instancia debió determinar que no incumplió con el contrato y que realizó la obra conforme a éste.

En cuanto a este extremo, el foro apelado determinó que el contrato establecía que el término para la realización de la obra (365 días) era esencial, por lo tanto se pactó una cláusula penal de $500.00 diarios, por demoras no excusables, a partir de que la fecha pautada para la conclusión del proyecto hasta la fecha en que estuviera sustancialmente completado.

Una vez concluido el término de 365 días, el Municipio le concedió al ingeniero Nazario una extensión de tiempo adicional de 6 meses para que terminase la obra. Sin embargo, el ingeniero Nazario no completó la obra.

Igualmente, el Tribunal de Primera Instancia determinó que el ingeniero Nazario incurrió en otros incumplimientos, relativos a la repavimentación de las calles, violaciones de leyes ambientales y de aquellas relativas a la seguridad en el proyecto, así como tampoco sometió las certificaciones parciales puntualmente.

En la determinación de hechos número 43, el foro apelado expresa que a base de la prueba que le fue presentada, y que creyó, el ingeniero Nazario tenía *"...amplios y diversos problemas de organización y gerencia en el proyecto"*. Añadió dicho foro que: *"Quedó demostrado de forma incontrovertida por la prueba presentada que el ingeniero Nazario comenzaba varias obras del proyecto a la vez y no terminaba ninguna"*. ■

Por lo tanto, el Municipio declaró en *"default"* al ingeniero Nazario. GA no concluyó la construcción del proyecto, tal como se había estipulado en el contrato de fianza. El ingeniero Nazario entregó el proyecto en condiciones deplorables. No construyó la estación de bombas, no instaló algunos tramos de tubería y existían tramos en los cuales los trabajos estaban incompletos. ■ Por lo tanto, el proyecto fue llevado nuevamente a subasta. El nuevo contratista terminó la obra en aproximadamente 3 meses, con los mismos planos, incluida la estación de bombas.

El ingeniero Nazario y GA, en su quinto y cuarto señalamiento de error, respectivamente, plantean que

existían diferencias entre el plano y las condiciones del terreno, que la responsabilidad de éstas era del Municipio, y que éste debió compensar al ingeniero Nazario por las diferencias.

Sobre el asunto de las diferencias en los planos, el Tribunal de Primera Instancia formuló las siguientes determinaciones:

*"47. El ingeniero Nazario conocía el lugar donde se iba a desarrollar el proyecto, dado que visitó el predio donde se iba a efectuar la construcción antes de licitar, hecho que acreditó bajo juramento en el "Site Visit Affidávit" que acompañó con los pliegos de licitación.*

*48. El ingeniero Nazario debió haber conocido cualquier obstáculo visible que allí existiese y debió cotizar en consideración a lo que en efecto había en el lugar donde se iba a construir la obra...*

*56. La prueba desfilada estableció, además, que el ingeniero Nazario no siguió el procedimiento establecido en el contrato para solicitar órdenes de cambio, y que no existe ni siquiera una orden de cambio aprobada por el Alcalde durante el término original del contrato, ni durante la vigencia de la extensión de tiempo de seis (6) meses que se le concedió.*

...

*65. ...Surge del contrato presentado en evidencia y de las instrucciones adicionales a los licitadores, el cual es un documento contractual, que los licitadores tienen que examinar cuidadosamente las especificaciones y los planos, así como utilizar cualesquiera medios que puedan ser necesarios para conocer a su completa satisfacción, no sólo la cantidad de materiales, labor, amplitud y requerimiento del trabajo, sino también las condiciones bajo las cuales el trabajo especificado tiene que ser realizado. Si durante la "visita al sitio" surge que existen áreas pavimentadas..., estructuras u obstáculos... no mostrados en los planos o las especificaciones, será responsabilidad del licitador incluir en su precio de licitación el costo de remoción de áreas pavimentadas, superficies, estructuras y obstáculos...La licitación tiene que reflejar esos costos. El argumento de que esos costos no fueron incluidos en la licitación, no constituirá base para una reclamación o ajuste de precio.*

66. Quedó establecido con la prueba desfilada que con una mera visita al lugar era suficiente para contabilizar las viviendas que allí existían y por consiguiente conocer con exactitud, el número de acometidas que iba a ser necesario instalar y por lo tanto cotizar por el número de acometidas correspondientes. El incremento en costo por instalación de acometidas hubiese podido ser completamente justificado por el contratista en la licitación al traer a la atención del Municipio que el número era mayor al contemplado en los planos.

67. Las acometidas adicionales que fueron instaladas pudieron haber sido constatadas contra los planos y conocido por el contratista de antemano de su existencia, de modo que cotizara por ellas antes de comenzar el proyecto.

*68. La demolición y construcción de la alcantarilla por la cual reclama el ingeniero Nazario trabajos adicionales, era previsible; éste pudo haberse percatado de la necesidad de realizar esos trabajos al. visitar el área previo a someter su propuesta, si él hubiese efectuado una visita adecuada al lugar como acreditó mediante declaración jurada ("Site Visit Affidávit") y no una visita pro forma al lugar. Por lo que según los términos del propio contrato suscrito, no se justifica la reclamación que por esa partida hizo luego el ingeniero Nazario."*

*GA, en su octavo señalamiento de error alega que el Tribunal de Primera Instancia debió determinar que*

*el Municipio incumplió el contrato, ya que no adquirió los terrenos para la estación de bombas. GA sostiene que el ingeniero Nazario no podía invadir terrenos ajenos, ya que hubiese cometido el delito de entrada a heredad ajena y edificado de mala fe en terreno ajeno.*

Sobre este particular, el Tribunal de Primera Instancia determinó que al momento en que el nuevo contratista concluyó la obra, aún el Municipio no había adquirido la parcela donde se construiría la estación de bombas, sin que esto fuera óbice o constituyera un impedimento para la referida construcción.

En la determinación de hechos número 40, el foro apelado expresa que el ingeniero Nazario comenzó los trabajos para la construcción de la estación de bombas, aún cuando el Municipio no había adquirido la parcela; hecho que era de su conocimiento. Sin embargo, la razón por la que el ingeniero Nazario no pudo construir la estación de bombas fue porque confrontó problemas para controlar el agua en la excavación que debía hacer para construir la estación de bombas, dado el nivel freático del lugar. El tribunal sentenciador resalta que este hecho surgió del testimonio del ingeniero Nazario.

En la siguiente determinación de hechos (41), el tribunal apelado reseña que el ingeniero Nazario confrontó múltiples problemas con la instalación de las tuberías sanitarias y con la construcción de la estación de bombas, debido a que no siguió las instrucciones del manufacturero.

El Tribunal de Primera Instancia, en su determinación de hechos número 61, resalta que la prueba desfilada demostró que el ingeniero Nazario, desde que empezó a construir, colocó materiales en la parcela en la cual se erigiría la estación de bombas, sin que nadie interviniese para impedirle el acceso a dicho predio, o requerirle, verbalmente o por escrito, que sacara los materiales que había colocado, o que dejara de trabajar en esta área. Incluso, el ingeniero Nazario realizó una excavación profunda en la parcela, como parte de la construcción de la estación de bombas, sin que persona alguna se lo impidiera. 

En la determinación de hechos número 63, el Tribunal de Primera Instancia destaca el hecho de que el ingeniero Nazario, durante su testimonio admitió que la obra se había concluido por otro contratista, que era funcional y que fue aceptada por la AAA, a pesar de que no se había concluido el trámite de adquisición de la parcela donde se construyó la estación de bombas.

El ingeniero Nazario y GA, en el tercer señalamiento de error contenido en sus respectivos señalamientos de error, arguyen que la demora en la conclusión de la obra no le era imputable, ya que se debió a la incuria del Municipio y a problemas ajenos a la construcción. En cuanto a la demora, el Tribunal de Primera Instancia formuló las siguientes determinaciones de hechos:

*"72. Surgió de la prueba desfilada y creída, como hecho incontrovertido, que las razones para que el ingeniero Nazario no pudiera concluir la obra que le fue adjudicada, dentro del término que se le concediera para ello, fueron su incompetencia, utilización de técnicas inadecuados, y falta de organización y de gerencia en el proyecto.*

...

*75. Quedó establecido de forma incontrovertida que los atrasos que el ingeniero Nazario sufrió en la construcción del proyecto no tuvieron nada que ver con la alegada no aprobación de los "submittals"; tampoco tuvo que ver la alegada pérdida del turno con el manufacturero.*

*76. Quedó demostrado que desde mayo de 1993, mediante conversación telefónica, el Municipio le había aprobado al ingeniero Nazario los "submittals" de los registros...*

*77. ...Se estableció que el problema que tuvo el ingeniero Nazario con el manufacturero fue en la entrega de los registros, ya que se trataban de 143 registros que no eran uniformes, con especificaciones particulares, y que no le fueron entregados en su totalidad simultáneamente, si no por filtración, esto tuvo el efecto de dilatar los trabajos. Esta situación y retraso es imputable al contratista y no al Municipio.*

*78. El ingeniero Nazario, contratista, admitió desde un principio que la obligación de tener los registros en tiempo en el proyecto era una obligación suya y no del dueño de la obra, así como reconoció además la importancia de los registros para poder inspeccionar las tuberías instaladas."*

Después de estudiar con detenimiento la transcripción del juicio, somos del criterio que el foro sentenciador no cometió ninguno de los señalamientos de error en los que el ingeniero Nazario y GA le imputan haber incidido al apreciar la prueba. El Tribunal de Primera Instancia no incurrió en error manifiesto, pasión, prejuicio o parcialidad al apreciar la prueba que tuvo ante su consideración. Por lo tanto, nos está vedado, a nivel apelativo, intervenir con las determinaciones de hechos, la apreciación de la prueba y la adjudicación de credibilidad efectuada por el juzgador de los hechos. *Trinidad v. Chade*, **2001 J.T.S. 10**, a la pág. 793; *Mun. de Ponce v. Autoridad de Carreteras,* **2001 J.T.S. 3**, a la pág. 658.

En los señalamientos de error antes reseñados, el ingeniero Nazario y GA nos intiman a sustituir las determinaciones de hechos formuladas por el hermano foro sentenciador en su extensa y bien fundamentada sentencia, por su propia apreciación de la prueba y alegaciones. Sabido es que este foro apelativo no puede descartar y sustituir por nuestras propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones tajantes y ponderadas del foro de primera instancia. La determinación de credibilidad del tribunal sentenciador es merecedora de gran deferencia por parte de este Tribunal. Es ese foro el que está en mejor posición de aquilatar la prueba testifical desfilada, ya que el juez de instancia fue quien oyó y vio declarar a los testigos. *Argüello López v. Argüello García*, **2001 J.T.S. 127**, a la pág. 94.

## VII

GA, en su séptimo error, alega que el Tribunal de Primera Instancia erró al no admitir una orden de cambio, preparada por las partes dentro de un proceso cuyo fin era de transar el pleito. Posteriormente, las partes no pudieron llegar a ningún acuerdo. No se cometió este señalamiento de error.

Precisamente por la deseabilidad de que las partes conversen y lleguen a acuerdos sin necesidad de intervención judicial, es que no se admite evidencia de conversaciones o negociaciones habidas entre dos partes litigantes con miras a transigir una cuestión litigiosa pendiente. Dichas conversaciones tampoco pueden ser aducidas como defensas por una parte contra la otra, y la oferta de transacción que una parte hiciera no produce efecto legal alguno ni puede ser presentada en evidencia contra la otra parte si ésta no la hubiere aceptado. *Nieves López v. Rexach Bonet*, 124 D.P.R. 427, 447 (1989); *Pueblo v. Central Cambalache*, 59 D.P.R. 60 (1941).

Esta prohibición aplicará, siempre y cuando la evidencia sea presentada para probar responsabilidad o para probar que la reclamación o parte de ésta no es válida. Regla 22 (B) de las de Evidencia, 32 L.P.R.A. Ap. IV, R. 22.

El propósito de esta norma es fomentar las transacciones extrajudiciales de las disputas o controversias civiles. Ernesto Chiesa, *Práctica Procesal Puertorriqueña - Evidencia*, San Juan, **Publicaciones J.T.S., Inc.**, 1979, Vol. I., pág. 98. Al estar prohibido presentar evidencia de conversaciones dirigidas a una transacción, se propicia que las partes negocien libremente, sin temor a que sus ofertas sean consideradas admisiones de culpa o indicios de responsabilidad.

## VIII

GA también plantea, en su noveno señalamiento de error, que el Tribunal de Primera Instancia erró al determinar que había actuado con temeridad.

La Regla 44.1(d) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.1(d), autoriza al Tribunal a imponer honorarios de abogado cuando una parte o su abogado ha procedido con temeridad.

El Tribunal Supremo de Puerto Rico ha expresado que la acción que amerita la imposición de este tipo de condena es cualquiera que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o que produzca la necesidad de que otra parte incurra en gestiones evitables. Su propósito es establecer una penalidad al litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamento, obliga a la otra parte, innecesariamente, a asumir molestias, gastos, trabajos e inconvenientes de un pleito. *Rivera Rodríguez v. Tiendas Pitusa, Inc.,* **99 J.T.S. 107**, a la pág. 1246; *Blás v. Hospital Guadalupe*, **98 J.T.S. 101**, a las págs. 1436-1437; *Fernández v. San Juan Cement Co., Inc.,* 118 D.P.R. 713, 718-719 (1987).

La determinación de temeridad es una de carácter individual. El tribunal ha de apreciar la existencia de temeridad en la actuación de la parte litigante. *Montañez López v. U.P.R.*, **2002 J.T.S. 40**. La imposición de honorarios por temeridad descansa en la discreción del Tribunal. Sin embargo, en aquellos casos en que los tribunales inferiores abusen de su discreción, podemos revisar su actuación. *Jarra Corporation v. Axxis Corporation*, **2001 J.T.S. 167**.

El Tribunal Supremo, en *Pueblo v. Sánchez González*, 90 D.P.R. 197, 200 (1964), definió así el concepto *"discreción"*:

*"Discreción, naturalmente, significa tener el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. En el ámbito judicial, sin embargo, el mencionado concepto no significa poder para actuar en una forma u otra haciendo abstracción el resto del Derecho.*

*No resulta fácil precisar cuándo un tribunal de justicia incurre en un abuso de discreción. El adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad. Discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera."*

*Pueblo v. Ortega Santiago*, 125 D.P.R. 203, 211 (1990).

En este último caso, el Tribunal abundó en lo que se entiende por abuso de discreción:

*"El abuso de discreción se puede manifestar de varias maneras en el ámbito judicial. Se incurre en ello, entre otras y en lo pertinente, cuando el juez, en la decisión que emite, no toma en cuenta e ignora sin fundamento para ello un hecho material importante que no podía ser pasado por alto; cuando, por el contrario, el juez sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez livianamente sopesa y calibra los mismos."*

En el caso de autos, el Tribunal de Primera Instancia le impuso a GA el pago de $10,000.00, por concepto de honorarios de abogado. Determinó, como cuestión de hecho, que se estableció de forma incontrovertida que GA actuó de mala fe; que funcionarios y agentes de GA hicieron representaciones e indujeron al Municipio a declarar en *"default"* al ingeniero Nazario, bajo el compromiso de que ellos habrían de concluir la obra si se declaraba en *"default"* al ingeniero Nazario, lo que luego no hicieron. ■

*No encontramos que el Tribunal de Primera Instancia haya abusado en el ejercicio de su discreción; por lo tanto, no intervendremos con la partida de honorarios de abogado que le impuso a GA por tal concepto.*

## IX

Por los fundamentos expuestos, se modifica la sentencia apelada; se devuelve el caso al Tribunal de Primera Instancia para que éste formule las determinaciones correspondientes relativas a si el 10% retenido de las certificaciones de pago ($147,883.43) excedió los costos directos e indirectos de completar la obra, de modo que ese exceso sea pagado al ingeniero Nazario; o si, por el contrario, esos costos exceden el balance retenido, en cuyo caso el ingeniero Nazario tenga que pagar la diferencia al Municipio. Así modificada, se confirma la sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 2002 DTA 102

**1.** Pág. 13 de la sentencia apelada.

**2.** Págs. 359 y 360 del apéndice de GA.

**3.** Determinación de hechos número 42, pág. 10 de la sentencia apelada.

**4.** Determinación de hechos número 50, pág. 12 de la sentencia apelada.

**5.** Págs. 99 y 100 del volumen I de la transcripción de evidencia.

**6.** Págs. 127 y 128 de la transcripción de evidencia; determinación de hechos número 64 de la sentencia apelada.

**7.** Cláusula 19.1 del contrato, pág. 361 del Ápendice de GA.

**8.** Determinaciones de hechos 42 y 55.

**9.** Determinación de hechos número 54.

**10.** Determinación de hechos número 57.

**11.** Determinación de hechos número 62.

**12.** Determinaciones de hechos número 82 y 83.