Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III-ESPECIAL

| | | |
|---|---|---|
| ASOCIACIÓN DE PROPIETARIOS Y RESIDENTES CIUDAD JARDÍN BAIROA, INC. (APRCJB, INC.)<br><br>Apelante<br><br>v.<br><br>DAVID BERRÍOS VÁZQUEZ, EVELIS BERNIER Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS<br><br>Apelada | KLCE202301363 | *Certiorari*, acogido como **Apelación** procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso núm.: CG2019CV00860<br><br>Sobre: Cobro de Dinero por la Vía Ordinaria |

Panel integrado por su presidente, el juez Figueroa Cabán, el juez Bonilla Ortiz y la jueza Mateu Meléndez

**Figueroa Cabán, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de mayo de 2024.

Comparece la Asociación de Propietarios y Residentes Ciudad Jardín Bairoa, Inc., en adelante la Asociación o la apelante, quien solicita la revisión y modificación de la *Sentencia Enmendada*, emitida el 30 de octubre de 2023, por el Tribunal de Primera Instancia, Sala de Caguas, en adelante TPI. Mediante la misma, el TPI ordenó al señor David Berríos Vázquez, a la señora Evelis Bernier Vicente y a la sociedad legal de bienes gananciales compuesta por ellos, en adelante los apelados, a pagar las costas del proceso más $5,000.00 por concepto de honorarios de abogado.

Como el recurso solicita la revisión de una *Sentencia Enmendada*, lo acogemos como una apelación, aunque conservará su clasificación alfanumérica y por

Número Identificador

SEN2024_____

los fundamentos que expondremos a continuación, se confirma la *Sentencia Enmendada* apelada.

**I.**

En el contexto de un pleito sobre cobro de dinero de cuotas de gastos de control de acceso y de mantenimiento de áreas verdes y comunes de la Urbanización Ciudad Jardín Bairoa,[1] el TPI celebró el juicio en su fondo. Luego de examinar la prueba documental y testifical, dictó sentencia contra los apelados por el importe de las costas del proceso y $5,000.00 en concepto de honorarios de abogado.[2]

No obstante, declaró no ha lugar la reclamación por el pago de las cuotas desde enero de 2009 a julio de 2016. Sobre el particular, determinó que la prueba sustentó que, aunque los apelados tenían una deuda por concepto de mantenimiento, "no estableció a cuánto ascendía la misma". En consecuencia, declaró no ha lugar la reclamación de cobro por cuotas durante ese periodo.

Además, no reconoció la totalidad de los cargos por mora reclamados por la apelante. A su entender, los apelados solo tienen la obligación de pagar las cuotas desde febrero de 2018 porque el Reglamento sobre el Proceso de Cobro de Cuotas de Mantenimiento entró en vigor después de esa fecha. Consideró que la prueba presentada "no establece cuáles meses no fueron pagados…" dentro de dicho periodo, "así como si los demandados realizaron algún pago o abono a dicha deuda".

En desacuerdo, la Asociación presentó un *Recurso de Certiorari*, que acogimos como uno de apelación, en el que alega que el TPI incurrió en los siguientes errores:

---

[1] Apéndice de la apelante, págs. 68-74.
[2] *Id.*, págs. 1-4.

ERRÓ EL T.P.I. AL EXCLUIR COMO EVIDENCIA EN EL JUICIO EN SU FONDO LOS LIBROS DE CONTABILIDAD RELACIONADOS A LOS AQUÍ RECURRIDOS AUN CUANDO EL CPA HUGO BURGOS SÁNCHEZ TESTIFICÓ SOBRE LA DEUDA CONTRAÍDA POR ESTOS POR HABER SIDO ESTE EL TESORERO DE LA ASOCIACI[Ó]N DE CIUDAD JARDÍN DE BAIROA Y AUN HABIENDO ESTE TESTIFICADO QUE TANTO LA SRA. PAMBLANCO COMO LOS DEMÁS MIEMBROS DE LA ADMINISTRACIÓN DE LA ASOCIACIÓN TENÍAN ACCESO A LOS MISMOS CUMPLIENDO CON LO DISPUESTO EN LA REGLA 805(F) DE EVIDENCIA.

ERRÓ EL T.P.I. AL NO IMPONERLE UNA CUANTÍA RAZONABLE POR CONCEPTO DE TEMERIDAD A LOS RECURRIDOS CUANDO, DE LA PROPIA SENTENCIA SURGE QUE, LUEGO DE VARIOS AÑOS DE LITIGIO, PAGARON PARTE DE LA DEUDA CONTRAÍDA Y EXIGIDA POR LA ASOCIACIÓN.

ERRÓ EL T.P.I. AL NO IMPONERLE EL PAGO POR CONCEPTO DE CARGOS POR MORA A LOS RECURRIDOS DE FEBRERO DE 2018 A AGOSTO DE 2022 CUANDO PAGARON TARDÍAMENTE LAS CUOTAS DE MANTENIMIENTO CORRESPONDIENTES A DICHO TÉRMINO, SURGIENDO EL DESGLOSE DE LA DEUDA POR MES, AÑO Y CANTIDAD DE UN DOCUMENTO PRESENTADO POR LA PROPIA PARTE RECURRIDA ANTE EL T.P.I.

Examinados los escritos de las partes, la transcripción de la prueba oral y los documentos que obran en autos, estamos en posición de resolver.

**II.**

**A.**

Prueba de referencia es "una declaración que no sea la que la persona declarante hace en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado".[3] Como regla general no es admisible, salvo que por ley se disponga otra cosa.[4] Así pues, una declaración constitutiva de prueba de referencia presenta cuatro áreas de riesgo, a saber: (1) narración del evento (debe presumirse que el lenguaje utilizado refleja fielmente la percepción del declarante); (2) percepción del evento (debe presumirse que el evento ha sido claramente percibido y correctamente interpretado); (3) recuerdo del evento (debe presumirse que la memoria del declarante es fiel a lo observado); y (4) sinceridad

---

[3] Regla 801(c) de Evidencia de 2009 (32 LPRA Ap. VI); *Pueblo v. Zeno Torres*, 211 DPR 1, 16-17 (2022).
[4] Regla 804 de Evidencia de 2009 (32 LPRA Ap. VI).

del declarante (debe presumirse que el declarante desea decir la verdad).[5]

El profesor Ernesto L. Chiesa Aponte sostiene que la razón que motiva la regla general de exclusión de prueba de referencia es la falta de confiabilidad de la misma y su dudoso valor probatorio, puesto que de ordinario este tipo de declaración no tiene las garantías de confiabilidad que se obtienen mediante un testimonio en corte. Esto es así, ya que la declaración de un testigo en un tribunal se hace bajo juramento, frente a la parte perjudicada por la declaración, frente al juzgador que ha de aquilatar su valor probatorio y está sujeta al contrainterrogatorio de las partes que tengan a bien hacerlo.[6]

En lo aquí pertinente, el inciso 805 de las Reglas de Evidencia de Puerto Rico de 2009, reconoce excepciones a la regla general de exclusión de prueba de referencia, aunque la persona declarante esté disponible como testigo. Entre estas excepciones se encuentra la de "récord del negocio". Ahora bien, para que se configure dicha excepción es indispensable que se cumplan cabalmente los siguientes requisitos:

> . . . .
> (F) Récords de actividades que se realizan con regularidad: Un escrito, informe, récord, memorando o compilación de datos -en cualquier forma- relativo a actos, sucesos, condiciones, opiniones o diagnósticos que se hayan preparado en o cerca del momento en que [e]stos surgieron, por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por [e]sta, si dichos récords se efectuaron en el curso de una actividad de negocios realizada con regularidad, y si la preparación de dicho escrito, informe, récord, memorando o compilación de datos se hizo en el curso regular de dicha actividad de negocio, según lo

---

[5] *Toledo Maldonado v. Cartagena Ortiz*, 132 DPR 249, 259 (1992). Véase, además, *Nieves López v. Rexach Bonet*, 124 DPR 427, 433 (1989).
[6] E. L. Chiesa, *Reglas de Evidencia de Puerto Rico*, San Juan, Ed. Publicaciones JTS, 2009, pág. 466.

demuestre el testimonio de su custodio o de alguna otra persona testigo cualificada, o según se demuestre mediante una certificación que cumpla con las disposiciones de la Regla 902(K) o con algún estatuto que permita dicha certificación, a menos que la fuente de información, el método o las circunstancias de su preparación inspiren falta de confiabilidad….[7]

Conviene destacar, por ser esencial a esta excepción, que los récords deben ser producidos "en el curso de una actividad de negocios realizada con regularidad".[8] Así pues, "[e]l testigo que declare sobre el método de preparación del récord de negocio no tiene que tener conocimiento personal sobre el contenido de las declaraciones presentadas en el récord. El testigo no tiene que ser la persona que custodie los récords[,] **pero tiene que conocer el método de preparación y la identidad de los récords".[9]**

### B.

Además, conforme disponen las Reglas de Evidencia de 2009, el testimonio de la persona a cargo de su custodia o de alguna otra persona cualificada puede sustituirse por una certificación que cumpla con las disposiciones de la Regla 902(k) de Evidencia o con algún estatuto que permita dicha certificación.[10]

En particular, cuando los documentos, por su naturaleza, resulten difíciles de alterar o falsificar, de modo que se consideren razonablemente auténticos de su faz, el inciso (k) permite que el récord de una actividad realizada con regularidad pueda autenticarse *prima facie*. Sin embargo, el récord por sí solo no es

---

[7] 32 LPRA Ap. VI, R. 805(F).
[8] E. L. Chiesa, *Reglas de Evidencia Comentadas,* 1ª ed., San Juan, Ed. Situm, Inc., 2016, pág. 302.
[9] R. Emmanuelli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño*, 4ta ed., San Juan, Ed. Situm, Inc., 2015, pág. 513. (Énfasis suplido).
[10] Regla 902(k) de Evidencia de 2009 (32 LPRA Ap. VI).

suficiente. Es requisito indispensable anejar una declaración jurada de la persona a cargo de su custodia, en la que certifique las exigencias en cuanto a la autenticidad del documento. En específico, la Regla 902 (k) de Evidencia, *supra*, declara:

> No se requerirá evidencia extrínseca de autenticación como condición previa a la admisibilidad de:
>
> (k) Récords certificados de actividades que se realizan con regularidad. — El original o un duplicado de un récord de actividades que se realizan con regularidad dentro de la jurisdicción del Estado Libre Asociado de Puerto Rico y los Estados Unidos de América, el cual sería admisible conforme a la Regla 805(f), si se acompaña de una declaración jurada de la persona a cargo de su custodia o de alguna otra persona cualificada, que certifique que dicho récord:
>
> > (1) Se preparó en o cerca del momento en que ocurrieron los sucesos o las actividades mencionadas por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por ésta;
> >
> > (2) se llevó a cabo en el curso de la actividad realizada con regularidad, y
> >
> > (3) se preparó como una práctica regular de dicha actividad.
>
> La parte que se proponga someter un récord como evidencia, conforme a lo dispuesto en este inciso, tendrá que notificar por escrito su intención a todas las partes contrarias. Además, tendrá que tener el récord y la declaración jurada disponibles para inspección con suficiente antelación a su presentación como evidencia a fin de brindar a la parte contraria una oportunidad justa para refutarlos.[11]

En otras palabras, esta autenticación *prima facie* se refiere a la preparación de una declaración jurada que exprese detalladamente los hechos que establecen los requisitos necesarios bajo la Regla 805(f) de Evidencia, *supra*, para la admisibilidad de un récord de actividad regular de negocios.[12] Por lo tanto, la declaración jurada no solo establece la autenticidad, sino también

---

[11] *Id*.
[12] Emmanuelli Jiménez, *op. cit.*, pág. 582.

la admisibilidad como excepción a la regla general de prueba de referencia debido a que satisface los criterios de dicha regla.[13] La certificación, mediante declaración jurada, permite acelerar el proceso de autenticación y admisibilidad de los récords de actividad regular de negocios.[14]

Finalmente, conforme a la jurisprudencia aplicable, el testigo que declare no tiene que ser la persona que custodie los récords, pero sí tiene que conocer el método de preparación y la identidad de estos.[15]

### c.

Respecto a los honorarios de abogado, la Regla 44.1 de Procedimiento Civil establece:

> […]
>
> (d) *Honorarios de abogado.* – En caso que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta.[16]

En términos generales, se considerará temeraria toda aquella conducta que haga innecesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias.[17] La imposición de intereses y honorarios de abogado por temeridad es una facultad discrecional del tribunal sentenciador que no será variada a menos que la misma constituya un abuso de discreción.[18] Persigue penalizar a

---

[13] *Id.*, págs. 582-583.
[14] *Id.*, pág. 510.
[15] *Id.*, pág. 513, citando a *US v. Veytia Bravo*, 603 F.2d. 1187 (1979).
[16] Regla 44.1 de Procedimiento Civil de 2009 (32 LPRA Ap. V).
[17] *Pérez Rodríguez v. López Rodríguez*, 210 DPR 163, 193 (2022); *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 212 (2013).
[18] *SLG González-Figueroa v. SLG et al.*, 209 DPR 138, 150 (2022); *Pérez Rodríguez v. López Rodríguez*, *supra*, pág. 193.

aquel litigante perdidoso que, por su obstinación, terquedad, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte a asumir innecesariamente las molestias, gastos, trabajo e inconveniencias de un pleito.[19] Una vez determinada la existencia de temeridad, la imposición del pago de honorarios de abogado es mandatoria.[20] Por ello, los tribunales revisores sólo intervendrán cuando surja de tal actuación un claro abuso de discreción.

### D.

Por otro lado, las Reglas de Procedimiento Civil disponen para el pago de intereses sobre una sentencia que ordena el pago de dinero, tanto en la etapa posterior a la imposición de la sentencia como en la etapa anterior, si media temeridad de una de las partes durante el pleito.[21] Al respecto, conforme la Regla 44.3 de las de Procedimiento Civil:

> […]
>
> (b) El tribunal también impondrá a la parte que haya procedido con temeridad el pago de interés al tipo que haya fijado la Junta en virtud del inciso (a) de esta regla y que esté en vigor al momento de dictarse la sentencia desde que haya surgido la causa de acción en todo caso de cobro de dinero y desde la presentación de la demanda, en caso de daños y perjuicios, y hasta la fecha en que se dicte sentencia a computarse sobre la cuantía de la sentencia, excepto cuando la parte demandada sea el Estado Libre Asociado de Puerto Rico, sus municipios, agencias, instrumentalidades o funcionarios(as) en su carácter oficial. El tipo de interés se hará constar en la sentencia.[22]

De esta forma, el pago de intereses se impone sobre una sentencia que ordena el pago de dinero para desalentar la radicación de demandas frívolas, evitar la

---

[19] *Pérez Rodríguez v. López Rodríguez, supra,* pág. 193.

[20] *Id.*, págs. 192-193.

[21] R. Hernández Colón, *Derecho Procesal Civil*, 5ta. Edición, San Juan, Lexisnexis de Puerto Rico, Inc., 2010, sec. 4301, pág. 388.

[22] 32 LPRA. Ap. V, R. 44.3.

posposición irrazonable o injustificada en el cumplimiento de las obligaciones existentes y estimular el pago de las sentencias en el menor tiempo posible.[23]

Así pues, la imposición del interés legal presentencia es altamente discrecional y un foro apelativo sólo intervendrá con la determinación de imponerlo si se demuestra que se cometió un abuso de discreción.[24] No obstante, este interés sólo se puede imponer en casos de cobro de dinero o de daños y perjuicios.[25]

**E.**

Como regla general, un tribunal apelativo no debe intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que haya efectuado el juzgador de los hechos, ni tiene facultad de sustituir por sus propias apreciaciones, las determinaciones del foro de instancia.[26] Esto es, los tribunales apelativos deben mantener deferencia para con la apreciación de la prueba que realiza un tribunal de instancia.[27] El fundamento de esta deferencia es que el juez de primera instancia tuvo la oportunidad de observar toda la prueba presentada y, por lo tanto, se encuentra en mejor situación que el tribunal apelativo para considerarla.[28] En vista de esta deferencia, los tribunales apelativos no intervendremos con la apreciación de la prueba reflejada en las determinaciones de hechos del tribunal apelado en ausencia de circunstancias extraordinarias o

---

[23] Regla 44.3 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 44.3; R. Hernández Colón, *op cit.*, sec. 4301, pág. 388.
[24] *SLG González-Figueroa v. SLG et al.*, *supra*, pág. 150.
[25] *Id*, págs. 147-148.
[26] *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007); *Rolón v. Charlie Car Rental, Inc.*, 148 DPR 420, 433 (1999).
[27] *McConnel v. Palau*, 161 DPR 734, 750 (2004).
[28] *Argüello v. Argüello*, 155 DPR 62, 78-79 (2001).

indicios de pasión, prejuicio o parcialidad, o que cometió un error manifiesto.[29]

No obstante, cuando las conclusiones de hecho se basan en prueba pericial o documental, el tribunal de apelaciones se encuentra en la misma posición que el tribunal de instancia.[30] De modo que, bajo dicho supuesto, el tribunal intermedio no está obligado a conceder deferencia a la apreciación de la prueba del foro sentenciador.

### III.

Para la apelante, erró el TPI al excluir los "customer ledgers" relacionados con los apelados. Arguye que esta prueba era admisible bajo la Regla 805(F) de Evidencia, *supra*. En su opinión, el Tesorero de la Administración, que además es CPA, "entró la deuda para cada uno de los residentes en la plataforma Sage" y "aunque había entrado las referidas cantidades de manera global… este contaba con los libros de contabilidad de los recurridos [apelados] al momento de las entradas corroborando así las cuantías por mes, año y cantidad". Además, la Administradora, como los demás integrantes de la Administración, tenían acceso a dichos libros. Por tales razones, la Asociación concluye que la exclusión de los "customer ledgers" tuvo un efecto perjudicial sobre el resultado alcanzado.

Por otro lado, aduce que incidió el TPI al no imponerle a los apelados una cuantía razonable por concepto de temeridad "cuando de la propia sentencia surge que, luego de varios años de litigio, pagaron parte de la deuda contraída".

---

[29] *Gómez Márquez et al. v. El Oriental*, 203 DPR 783, 793 (2020).
[30] *Sucn. Rosado v. Acevedo Marrero*, 196 DPR 884, 918 (2016).

En cambio, para los apelados, la Identificación Núm. 7 fue correctamente excluida porque la apelante no pudo establecer su admisibilidad como excepción a la prueba de referencia bajo las Reglas 805(F) y 902(K) de las de Evidencia. También, opinan que la Asociación no logró establecer a cuánto ascendía la deuda reclamada en concepto de cuotas de mantenimiento, correspondiente al periodo de enero de 2009 a julio de 2016. Sostienen, además que, no erró el TPI al no imponer honorarios de abogado por temeridad. Ello obedece a que, en virtud de que los honorarios impuestos emanan estrictamente de las obligaciones de los apelados conforme a un régimen de servidumbres de equidad, por lo cual, cualquier partida por honorarios tiene que estar basada en la escritura de servidumbre y no en ningún otro fundamento jurídico. Finalmente, los apelados entienden que fue la apelante quien incurrió en mora porque aplicó los pagos, contrario a la imputación efectuada por aquellos.

Para comenzar, no se cometió el primer error. Nuestra revisión independiente e integrada de la prueba testifical y documental revela, que contrario a la Regla 805(F) de Evidencia, *supra*, la señora Pamblanco, testigo de la apelante, no pudo establecer que tenía conocimiento de la forma en que se preparaban los "customers ledgers". Específicamente, dicha testigo admitió que desconocía cómo se obtenía el contenido esencial de dichas compilaciones porque, la entrada de pagos, balances adeudados y conciliación de cuentas las realizaba un tercero distinto y ajeno a la señora Pamblanco.[31]

---

[31] Transcripción de la prueba oral, en adelante TPO, págs. 208, 209, 213-218 y 222.

Sobre el particular, conviene citar las expresiones del tribunal recurrido:

> Eh, el testimonio de la dama, a esos efectos lo único que declaró, que recuerde es que, ella recoge pagos, y ella los puede entrar al sistema. Pero, **me parece que ella no tiene conocimiento, porque ella ha mencionado el Departamento de Contabilidad en varias ocasiones. Parece que el Departamento de Contabilidad es el que maneja y actualiza esa data.** Eh, "por una persona que tiene conocimientos de dichos asuntos." **Ella no ha mencionado tener conocimiento sobre los asuntos de cómo lo maneja este listado, esta compilación de data que lleva a cabo el Departamento de Contabilidad.** De hecho, desconozco, porque no recuerdo que la dama haya testificado si el Departamento de Contabilidad es parte de "B" two "B" o no. O si es una, entidad distinta contratada por la urbanización… el asunto es que la dama por lo menos dice, que regularmente **si ella recibe pagos ella los entra al sistema. Pero como tal el procedimiento no crea [*sic.*] que se haya cumplido con esa parte. Al Tribunal le parece que no se ha cumplido con el predicado de la, ocho, cero, cinco, "f".**[32]

Tampoco se cometió el segundo error. De nuestra revisión *de novo* de los documentos que obran en autos y de la transcripción de la prueba oral, se desprende que no se configuró el cuadro fáctico que, conforme a nuestro ordenamiento procesal civil, justificaría la imposición de una medida tan drástica como la de honorarios por temeridad. Del mismo modo, no encontramos fundamento alguno para intervenir con la amplia discreción del tribunal recurrido al no decidir imponer sanciones por dicho concepto.

Finalmente, el tercer y último error no se cometió. A nuestro entender, el TPI no incurrió en pasión, prejuicio, parcialidad o error manifiesto al afirmar que "la prueba presentada, admitida y creída no establece cuáles meses no fueron pagados por los demandados dentro de dicho periodo de término, así como si los demandados realizaron algún pago o abono a dicha deuda",[33] razón por

---

[32] TPO, págs. 217-218. (Énfasis suplido).
[33] Apéndice del apelante, pág. 3. Véase, además, TPO pág. 282.

la cual, "no se puede determinar el montante de la mora reclamada"[34]. Y dicha evaluación de la prueba no nos sorprende, si se tiene en cuenta el enorme desfase entre las ambiciosas alegaciones de la parte apelante y la prueba -en no pocas ocasiones confusa, incompleta y fragmentada- que pretendió presentar en apoyo de su contención.

**IV.**

Por los fundamentos antes expuestos, se confirma la *Sentencia Enmendada*.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[34] *Id*. Véase, además, TPO pág. 282.